**Vincent DUBREUIL**

v.

**ALLSTATE INSURANCE CO.**

**No. 84–10–Appeal.**

Supreme Court of Rhode Island.

July 11, 1986.

Ronald J. Resmini, Timothy D. O'Hara, Ronald J. Resmini, Ltd., Providence, for plaintiff.

William Landry, John H. Blish, Edwards & Angell, Providence, for defendant.

## OPINION

SHEA, Justice.

This case is before the court on plaintiff's appeal from a judgment of the Superior Court granting the defendant's motion for summary judgment. We affirm.

Allstate Insurance Company had issued to the plaintiff, Vincent Dubreuil, an insurance contract with bodily-injury limits of $100,000 per person and $300,000 per accident and uninsured-motorist coverage in sums of $25,000 per person and $50,000 per accident. Allstate did not offer uninsured-motorist coverage in excess of these limits.

The plaintiff was seriously injured by an uninsured motorist. Allstate paid him up to the $25,000 limit under his uninsured-motorist coverage. Thereafter, he brought suit to recover for further expenses and damages that he claimed would have been paid to him if his uninsured-motorist coverage had allowed for more than the minimum amount provided for by statute. G.L. 1956 (1979 Reenactment) § 27–7–2.1 as amended by P.L. 1981, ch. 251, § 2 and G.L. 1956 (1982 Reenactment) § 31–31–7. Paragraphs 4 and 5 of Count 1 of Dubreuil's complaint state:

> "4. That at the time that the Defendants offered said insurance to Plaintiff, they or their duly authorized agent owed a duty of care to notify Plaintiff that he could purchase uninsured motorist insurance in excess of the Rhode Island statutory minimum of $25,000/50,000 and in fact that Plaintiff could purchase said insurance up to the amount of bodily injury liability coverage purchased by the Plaintiff.
>
> "5. That the Defendant was negligent in failing to notify Plaintiff of his right to purchase said uninsured motorist insurance in excess of the statutory minimum up to the amount of the bodily injury liability insurance purchased by the Plaintiff."

Allstate moved for summary judgment, which was granted.

■ In an affidavit filed in response to the motion for summary judgment plaintiff claimed that Allstate's agent, in answer to a direct inquiry, informed him that uninsured-motorist coverage could not be obtained in Rhode Island in amounts in excess of the statutory minimum amounts. The complaint, however, does not allege negligent misrepresentation, only failure to inform. The plaintiff made no effort to amend the complaint to include a claim of misrepresentation. Therefore, it was not an issue before the trial court and will not be considered here on appeal. *Cok v. Cok*, 479 A.2d 1184 (R.I.1984). The only issues entitled to review in this court are those properly raised in the proceedings below. *Zito v. Cassara*, 109 R.I. 112, 114, 281 A.2d 303, 304 (1971).

In reviewing the grant of a motion for summary judgment, this court applies the same rules as the trial court. This review includes an examination of the pleadings and affidavits viewed in the light most favorable to the party opposing the motion. Only when our review reveals no issues of material fact, and the moving party is entitled to judgment as a matter of law, will we uphold the trial justice's order granting summary judgment. *Barratt v. Burlingham*, 492 A.2d 1219 (R.I.1985). Therefore, in order for plaintiff to have prevailed against the motion for summary judgment, it was necessary that he establish, as a matter of law, that the Allstate agent was obligated to tell him that other carriers sold uninsured-motorist coverage in amounts in excess of those sold by Allstate. The plaintiff was unable to do so because no such duty exists under Rhode Island law.

Up to this time neither the Rhode Island Legislature nor this court has imposed an affirmative duty upon insurance agents to

inform prospective customers about coverage available from other insurers. We find no authority, nor is any cited by plaintiff, that would require an insurance salesperson to inform a prospective insured of every form or limit of coverage that is available through competitors. In Rhode Island it is the law that no policy for automobile insurance may be sold without offering to the insured uninsured-motorist coverage. Section 27–7–2.1. The minimum levels for this coverage are fixed by the statute in the amounts of $25,000 per person, $50,000 per accident. The statute sets only minimum insurance-coverage limits, a fact that this court recognized in *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 152, 282 A.2d 584, 590 (1971), where we held that "[t]he Legislature fixes a minimum, rather than a maximum, standard of [insurance] protection. There is no ceiling on the insured's right of recovery."

Placing such a responsibility upon an insurance agent would transform insurance from a competitive industry into an industry dedicated entirely to the public welfare. In a case quite similar to the one before us, *Gibson v. Government Employees Insurance Co.*, 162 Cal. App. 3d 441, 451–52, 208 Cal. Rptr. 511, 518 (1984), the California Court of Appeals in discussing the ramifications of imposing such a duty on the insurance industry stated that

"there are strong policy considerations which weigh against imposition of any liability on defendant for failing to provide plaintiffs with 'underinsured motorist' coverage or advising them of the availability of this coverage from other carriers in the industry. If defendant in the instant case were found liable to plaintiffs for failure to make this coverage available, whether directly or by referring plaintiffs to its competitors, the express and limited public policy of the state as established by the Legislature on the date defendant issued its policy of insurance to plaintiffs would be expanded by the judiciary. In addition, we believe negative consequences to the insurance industry would necessarily follow. The obvious extension of the rule advocated by plaintiffs herein would subject insurance carriers to liability for failing to advise their own insureds of an arguably better package of insurance offered by a competitor. Notwithstanding the obvious adverse effect on the stockholders of private insurers, such a rule would transform the competitive-sales insurance industry into something more closely resembling an industry dedicated solely to the public good. Moreover, it would remove any burden from the insured to take care of his own financial needs and expectations in entering the marketplace and choosing from among the competitive products available. It would render insurance companies, again *not* brokers retained by the insured, into personal financial counselors or guardians of the insured, a result we believe goes well beyond anything required by law or dictated by common sense."

The plaintiff has cited cases from other jurisdictions, but they are distinguishable from the one before us, either on the basis of state statutes that are dissimilar to our own or because a special relationship existed between the agent and the insured that gave rise to a duty in a particular situation.

The plaintiff's argument that he was entitled to the equitable remedy of reformation also fails. To warrant reformation, it must appear that by reason of a mistake, common to the parties, their agreement fails in some material respect correctly to reflect their prior completed understanding. *Hopkins v. The Equitable Life Assurance Society of the United States*, 107 R.I. 679, 270 A.2d 915 (1970); *see also Associates In Anesthesia, Inc. v. Mutual Benefit Life Insurance Co.*, 504 A.2d 477 (R.I.1986); *Vanderford v. Kettelle*, 75 R.I. 130, 64 A.2d 483 (1949). A mutual mistake is one common to both parties wherein each labors under a mis-

conception respecting the same terms of the written agreement sought to be canceled. *Id.* "[I]t [is] necessary to establish such mistake by clear and convincing evidence before a reformation of * * * an instrument should be granted." *Id.* at 139, 64 A.2d at 487. The allegations in the complaint do not set forth a mutual mistake. Reformation therefore is not available.

For these reasons the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.