**HARDING & SMITH, INC.**

v.

**CITY OF WOONSOCKET.**

**87–127–Appeal.**

Supreme Court of Rhode Island.

June 24, 1987.

Contractor on city water treatment plant improvement project filed motion for

Stephen A. Fanning, Jr., Edwards & Angell, Providence, for plaintiff.

M. Durkham Cannon, Woonsocket, for defendant.

## OPINION

FAY, Chief Justice.

In this contract dispute, the city of Woonsocket (city) appeals from a Superior Court judgment confirming an arbitration award in favor of Harding & Smith, Inc. (H & S).

The following facts are not in dispute. The parties entered into a contract on August 18, 1982, entitled "Water Treatment Plant Improvements Contract No. 1, 1982," which H & S substantially completed. When the city did not pay the balance due on the contract, H & S, on June 25, 1984, demanded arbitration under G.L. 1956 (1977 Reenactment) § 37–16–2(b) of the the Public Works Arbitration Act (the act).[1] The city did not appoint an arbitrator. On July 24, 1984, H & S gave the city notice by letter of its intention to petition the presiding justice of the Superior Court for the appointment of an arbitrator in accordance with § 37–16–2(b). The city responded by letter to H & S on July 31, 1984, stating in essence that since the contract did not involve a "public building," the act did not apply and refused, therefore, to select an arbitrator.

On August 3, 1984, H & S petitioned the court to appoint an arbitrator, which it did by order that day. When the appointed arbitrator could not proceed because of a discovered conflict of interest, a successor was appointed. On November 20, 1984, the matter was heard. Harding & Smith was represented by counsel at the hearing; no one appeared for the city. In a decision filed on December 6, 1984, the arbitrator found that the subject matter of the dispute fell within the act and that H & S had complied with its duties under the contract. He ordered the city to pay H & S $94,274.

On February 7, 1985, H & S filed a motion in Superior Court to confirm the arbitrator's award. On February 16, 1985, the city filed an objection to this motion alleging that the contract was not covered by the act; that H & S had failed to comply with the provisions of the contract by not paying certain subcontractors; that H & S did not follow the appropriate statutory procedure in bringing the action to arbitration; and that the award was unenforceable under the provisions of § 37–16–13. On March 11, 1985, a Superior Court justice confirmed the arbitrator's award, stating that she was satisfied that H & S had followed the appropriate procedure and that the city, by electing not to take part in the arbitration process and object to it, "was in the position of being tardy."

On appeal the city renews its contentions regarding the applicability of the act, the propriety of the procedure followed by H & S, and the failure by H & S to comply with the contract and argues that its objection to the motion to confirm was timely. Harding & Smith contends that these issues were not appropriately raised by the city in the proceedings before the Superior Court

---

1. General Laws 1956 (1977 Reenactment) § 37–16–2(b) provides in pertinent part:

   "Every contract for the construction, alteration, repair or painting of any public building, one (1) party to which is the * * * city, * * * which has a contract price of ten thousand dollars ($10,000) or more and which is executed on or after July 1, 1967, shall contain a provision for arbitration of disputes and claims arising out of, or concerning the performance or interpretation of, the contract as follows:

   'All claims, disputes, and other matters in question arising out of or relating to this contract or the performance or interpretation thereof shall be submitted to arbitration. Arbitration shall be commenced by a demand in writing made by one (1) party to the contract upon the other within a reasonable time after the dispute, claim, or other matter in question arose but in no event after payment in full of the contract price has been made and accepted. * * * In the event the party of whom arbitration is demanded shall fail to appoint his arbitrator within the time specified * * * either party may petition the presiding justice of the superior court to appoint a single arbitrator who shall hear the parties and make an award as provided herein. The petitioner shall give five (5) days notice in writing to the other party before filing his petition.'"

and are therefore not properly before us for review.[2]

There are two options open to a party who wishes to challenge the arbitrability of a contract. "It may refuse to submit to arbitration and compel a judicial determination of whether or not the dispute is arbitrable. * * * [Or] the issue of arbitrability may be submitted to the arbitration panel * * *." *Providence Teachers' Union Local 958—American Federation of Teachers v. Providence School Committee*, 433 A.2d 202, 204 (R.I. 1981). A party choosing this latter route must, however, "first state its objection to the arbitrability of the grievance at the arbitration hearing." *Id.* The city here neither compelled a judicial determination of whether the contract at issue was covered by the act nor appeared at the arbitration hearing to submit the issue to the arbitrator. It therefore did not preserve this issue for consideration either by the Superior Court or by us at this time.

Furthermore, the city raised its claims by way of an objection to a motion to confirm the arbitrator's award. According to § 37–16–13(b), a party who has not participated in the proceedings, and who has not made or been served with an application to compel arbitration under § 37–16–5, may raise the issue of the failure to comply with the contract in such a motion only if such party has not received proper notice of the intention to arbitrate. Otherwise, the failure to comply with the contract may be raised only by a motion for a stay of the arbitration, notice of which must be served within ten days of the service of the notice of the intention to arbitrate.

Harding & Smith submitted an affidavit and exhibits to the effect that the city had notice of the initial demand for arbitration; the five-day notice required by § 37–16–2 before H & S filed its petition to the Superior Court to appoint an arbitrator; and notice of the court order appointing the replacement arbitrator, of the original date of November 8, 1984, set by that arbitrator for a hearing, and of the rescheduling of that hearing to November 20, 1984. In addition, the record indicates that the city received notice from the original arbitrator of his intention to commence arbitration on September 28, 1984.

Although the notice received by the city may not have complied strictly with the dictates of the statute,[3] the city did not address the issue of notice or raise the claim of its insufficiency until it filed its prebriefing statement to this court. In its objection to the motion to confirm, it merely alleged in a conclusory fashion that the award was unenforceable under the provisions of § 37–16–13. Since the city plainly had actual notice of the intention to arbitrate, we find that under § 37–16–13(b) it could only raise the issue of the failure to comply with the contract by a motion to stay the arbitration. By waiting to raise this claim until after the arbitrator reached his decision, the city clearly was tardy.

Finally, the city's contention regarding the propriety of the procedure followed by H & S may have been appropriately raised in the objection to the motion to confirm since it can loosely be said to involve "the improper manner of the selection of the arbitrators."[4] However, we find this argument to have no merit.

---

**2.** The city also contends on appeal that the failure of the arbitrator to render a timely decision was fatal to the award. Since this issue was never mentioned in the proceedings below, we find it to have been waived. *See Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300, 301 (R.I. 1986).

**3.** Section 37–16–13(b) requires that the notice of intention to arbitrate "must state in substance that unless within ten (10) days after its service, the party served therewith shall serve a notice of motion to stay the arbitration, [it] shall thereafter be barred from putting in issue the making of the contract or the failure to comply therewith." It does not appear that the notice given the city by H & S complied with this requirement.

Furthermore, § 37–16–8 requires the arbitrators selected to "cause notice" of the time and place for the hearing to be given to each of the parties. Although the original arbitrator personally provided such notice of the hearing he scheduled, the notice of the hearing to be conducted by the replacement arbitrator was provided to the city by counsel for H & S.

**4.** Section 37–16–13(a) permits parties who have participated in the arbitration proceedings to object to a motion to confirm only on three

In essence, the city claims that H & S should have followed the procedure in § 37–16–5 and petitioned the Superior Court for an order compelling the parties to proceed with arbitration instead of petitioning the court to appoint an arbitrator and proceeding ex parte as it did under § 37–16–2(b).

All contracts executed after July 1, 1967 include as a matter of law the specific arbitration provision found in § 37–16–2(b). *Sterling Engineering & Construction Co. v. Town of Burrillville Housing Authority*, 108 R.I. 723, 726, 279 A.2d 445, 447 (1971). According to that provision, "[a]rbitration shall be commenced by a demand in writing made by one (1) party to the contract upon the other * * *." The provision goes on to delineate the method for selecting the arbitrators and specifically provides that "[i]n the event the party of whom arbitration is demanded shall fail to appoint [an] arbitrator within the time specified * * * either party may petition the presiding justice of the superior court to appoint a single arbitrator who shall hear the parties and make an award * * *." Section 37–16–2(b).

On the other hand, § 37–16–5 grants the Superior Court jurisdiction to enforce an arbitration provision such as the one implicitly included in this contract and any award made pursuant to that provision. See *Sterling, supra*. Thus "[a] party aggrieved by the failure, neglect or refusal of another to perform under a contract providing for arbitration, may petition the superior court * * * for an order directing that such arbitration proceed in the manner provided for in such contract." Section 37–16–5. Before issuing such an order, however, the judge must determine at an evidentiary hearing "that there is no substantial issue as to the making of the contract or the failure to comply therewith." *Id.* If such an issue exists, arbitration will be compelled only if it is determined at trial that a

written contract providing for arbitration was made and that there was a failure to comply therewith. Section 37–16–6.

 Faced with the refusal of the city to appoint an arbitrator, H & S could certainly have availed itself of the Superior Court's power to compel the city to arbitrate; however, such action was a matter of choice. The procedure outlined in § 37–16–5 is clearly optional, not mandatory. Harding & Smith thus acted appropriately in following the steps provided in § 37–16–2(b).

For the reasons stated, therefore, the defendant's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case are remanded to the Superior Court.

---

grounds, one of which is "the improper manner of the selection of the arbitrators." Section 37–16–13(b) permits parties who have not participated in the proceedings "also [to] put in issue the making of the contract or the failure to comply therewith" in such an objection. We interpret the "also" in § 37–16–13(b) to refer back to § 37–16–13(a) and to permit a party who has not participated in the proceedings to raise the grounds listed in that subsection as well.