[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Francis Soares and Laura M. Dietle (Plaintiffs), co-executors of the estate of Mary D. Soares, have brought this action seeking reformation of a warranty deed conveying certain real property to Robert and Susan Randall (Randalls). This Court, sitting without a jury, heard testimony and received evidence relative to whether Plaintiffs are properly entitled to a judgment ordering reformation.
Prior to 1948, Mary D. Soares (Mary Soares) together with her husband, owned a parcel of real property located on Middle Road in Portsmouth, Rhode Island. In July of 1948, Mr. and Mrs. Soares acquired title to an adjacent parcel of land (Side Lot) and added it to their existing property. In February of 1959, the Soares purchased the property located at 715 Middle Road (House Lot), commonly referred to as "the house next door." A fence constructed of wood and wire separates the southern boundary of the House Lot and the northern boundary of the Side Lot. There exist no other lines of demarcation between the Soares' property and the Side Lot.
Upon the death of her husband in 1984, Mary Soares acquired exclusive title to both the Side Lot and the House Lot. On February 6, 1987, Mary Soares and the Randalls executed a purchase and sale agreement concerning the House Lot located at 715 Middle Road. By a duly executed warranty deed, however, she conveyed both the House Lot and the Side Lot to the Randalls on April 20, 1987. Mary Soares deceased on July 13, 1990.
Plaintiffs, as co-executors of the estate of Mary Soares, have brought this equitable action to reform the warranty deed conveying the House Lot and the Side Lot to the Randalls. They submit that Mary Soares only intended to convey the House Lot and that the deed did not represent the true intentions of the parties since it inadvertently included a reference to the Side Lot. The Randalls, conversely, contend that Soares intended to convey approximately an acre of land and that the deed properly reflected the parties' intentions since the total area of the House Lot and the Side Lot approximates one acre.
It is well established that to prevail in a deed reformation action, the complainant must prove, by clear and convincing evidence, that the deed fails to accurately reflect the essential terms of the parties' prior understanding because of a mutual mistake. See Vanderford v. Kettelle, 64 A.2d 483, 489 (R.I. 1949). A mutual mistake exists where both parties labor under a misconception relative to the essential terms of their agreement.Id. at 488. Reformation is warranted only when the trial court, after carefully scrutinizing the credibility of the witnesses and balancing the weight of the evidence, is clearly and unhesitatingly convinced as to the truth of the precise facts in issue. Id. at 489.
With respect to the case at bar, the crucial issue in dispute is whether the parties' original understanding included the conveyance of the Side Lot together with the House Lot. Both parties presented witnesses and various other evidence to support their respective contentions. A thorough review of the trial record, therefore, is necessary before the Court can determine whether Plaintiffs are properly entitled to reformation.
Prior to the conveyance by deed in April 1987, the parties executed an agreement for the sale and purchase of the property located at 715 Middle Road, Portsmouth, Rhode Island. The evidence indicates that neither Mary Soares nor the Randalls read the deed description at the closing. Although the written agreement states that 715 Middle Road is depicted as Lot 25 on Assessor's Map 51, Plaintiffs concede that assessor's maps may not be relied upon with respect to real estate conveyances.
Mary and John Soares acquired title to the Side Lot in July of 1948 and added it to their existing farm property. Subsequent to her husband's death in 1984, Mary Soares continued to occupy and maintain the Side Lot as part of the farm property. In February of 1959, Mary and John Soares acquired title to the House Lot. The Soares used the House Lot primarily as rental property from the date of purchase in 1959 until the conveyance to the Randalls in 1987. It is undisputed that a fence serves as the boundary line between the House Lot and the Side Lot.
Subsequent to the 1987 conveyance to the Randalls, Mary Soares continued to occupy and maintain the Side Lot property up to the boundary fence. The credible and uncontroverted testimony of Francis Soares relative to landscaping maintenance and demolition of an old chicken coop after the conveyance clearly indicates that Mary Soares continued to exercise dominion and control over the Side Lot consistent with property ownership. Although Mary Soares' use of the property was open and continuous, the Randalls neither objected nor questioned the proper ownership of the Side Lot. Indeed, Robert and Susan Randall both testified that they were satisfied with their purchase of the House Lot as defined by the existing artificial boundaries. That the Randalls did not originally consider the Side Lot as part of the purchase and sale agreement is further corroborated by their testimony that they maintained and occupied only the land and improvements encompassed by the House Lot.
Plaintiffs also offered the testimony of Robert Silva, Esquire, who conferred with Mary Soares on numerous occasions relative to an unsuccessful sale of the House Lot to a tenant in 1985, and again when the property was sold to the Randalls in 1987. Attorney Silva credibly testified that on both occasions, Mary Soares intended to sell only the House Lot property located at 715 Middle Road. Silva further testified that Mary Soares had no intention to sell the Side Lot property located south of the fence.
Plaintiffs continued to occupy and maintain the Side Lot even after Mary Soares passed away. In February 1991, Plaintiffs engaged the services of Richard Nudenberg, a registered surveyor. After completing the survey, Nudenberg informed plaintiffs that the Side Lot had been conveyed to the Randalls. The Randalls thereafter refused numerous requests from Plaintiffs and their attorneys to reconvey the Side Lot. At trial, Robert Randall testified that he was unaware of any discrepancy in the deed or in the ownership of the property and that he intended to have the problem investigated.
Despite the overwhelming evidence indicating that Mary Soares never intended to convey the Side Lot, the Randalls maintain that the deed accurately reflects the original intentions of the parties. The primary argument advanced to support this contention is that Mary Soares represented to the Randalls that the property comprised approximately one acre. Since the total area of the Side Lot and the House Lot is approximately one acre, the Randalls contend that no mutual mistake exists.
The Randalls contend Mary Soares' representation regarding the area of the land was a material part of the transaction upon which they were entitled to rely. Evelyn Corey, Margaret Corey, and Manuel Silveira all testified that Mary Soares stated an intention to convey approximately an acre of land. Manuel Silveira also testified that Mary Soares knew the size of an acre. While this testimony would indicate that Mary Soares may have been familiar with the approximate dimensions of an acre, it does not otherwise resolve the crucial issue of whether she intended to convey the Side Lot. Indeed, the credible testimony of defense witnesses Margaret Corey and Manuel Silveira indicates that Mary Soares would clearly know the exact boundaries of her property rather than the exact dimensions of an acre, Moreover, Corey and Silveira further testified that Mary Soares on different occasions stated her intention to sell to the Randalls the "house next door", commonly understood as the House Lot. After careful consideration of the testimony, this Court is not convinced that Mary Soares' cognizance of an acre's dimensions otherwise establishes her intent to convey the Side Lot.
The only evidence that tends to support the Randalls' argument that Mary Soares intended to convey an acre of land is that the total area of the House Lot alone is substantially less than one acre (23,618 square feet). This Court, however, is not persuaded that the underlying basis of the parties' agreement contemplated only the conveyance of an acre of land. While Mary Soares may have represented that the total area approximated one acre, the overwhelming evidence in the record clearly indicates that the parties contracted only for the purchase and sale of the House Lot. This is not a case where the Randalls intended only to purchase an acre of land from Mary Soares who intended only to sell an acre of land.
Susan Randall testified that she viewed the House Lot on five different occasions prior to the sale and had observed all natural and artificial boundaries. Any representation as to the conveyance of approximately one acre of land, however, does not necessarily mean that the parties intended to include the conveyance of the Side Lot in their agreement. Rather it appears from the record that the Randalls intended to purchase and were satisfied with the House Lot under the mistaken belief that the property approximated an area of one acre.[1]
Notwithstanding the representations of Mary Soares, the purchase and sale agreement specifically referred to the parcel of land, with buildings and improvements, located at 715 Middle Road. The record clearly indicates that at all times after the conveyance, both the Randalls and Mary Soares believed that only the House Lot had been conveyed. Mary Soares continued to occupy and maintain the Side Lot property up to the boundary fence as she had prior to the conveyance. Consistent with their understanding of the original agreement, the Randalls testified at trial that prior to their actual knowledge of the deed discrepancy, they were satisfied that their ownership interest extended only to the boundary lines of the House Lot. Although the Randalls rely heavily on the representations of Mary Soares, this Court is not otherwise convinced that the square footage of the property represented an essential term upon which the parties had agreed.
Reformation is warranted only where the trial court is satisfied, by clear and convincing evidence, that the deed does not accurately reflect the essential terms of the parties' understanding. Based on a thorough review of the entire record, this Court is unhesitatingly convinced that the agreement between the Randalls and Mary Soares contemplated only the transfer and conveyance of the House Lot. The evidence clearly establishes that the parties never intended the representation of Mary Soares relative to the transfer of approximately one acre of land to be an essential part of their agreement. At all times subsequent to the conveyance in April 1987, Mary Soares occupied and maintained the Side Lot property while the Randalls occupied and maintained exclusively the House Lot property. Moreover, Robert and Susan Randall both testified that they believed that the artificial boundaries of the House Lot accurately represented their ownership interest. The uncontroverted and credible testimony of Plaintiffs' witnesses clearly demonstrates that Mary Soares never intended to convey the Side Lot to the Randalls. Since this Court is convinced that the parties only contracted for the sale and purchase of the House Lot, the deed's conveyance of the Side Lot to the Randalls was clearly inadvertent. Accordingly, this Court finds that Plaintiffs are properly entitled to reformation of the deed in question so that title to the Side Lot reverts to Plaintiffs while the Randalls retain exclusive title in only the House Lot.
Counsel shall prepare an appropriate judgment for entry.
[1] Under such circumstances, the Randalls might ordinarily be entitled to pursue a cause of action against the Estate of Mary D. Soares for recision or damages. While the Randalls acknowledge in their memorandum that they might be entitled to recision, it appears that they have chosen not to pursue that remedy. With respect to a cause of action for damages, the Randalls have neither asserted such a claim nor provided sufficient evidence to permit the Court to conform the pleadings to the evidence pursuant to Rule 15(b) of the Superior Court Rules of Civil Procedure. Since these claims arise from the same transaction and occurrence as the instant cause of action, Rule 13 of the Superior Court Rules obligated the Randalls to plead them as compulsory counterclaims. Given that the Randalls failed to assert counterclaims for either recision or damages, it appears that the doctrine of res judicata precludes them from hereafter asserting such claims.