### In re PUB DENNIS OF CUMBERLAND, INC., Debtor.

**Bankruptcy No. 90–12153.**

United States Bankruptcy Court, D. Rhode Island.

June 18, 1992.

---

Gerard McG. Decelles, Providence, R.I., for debtor.

Christine L. McBurney, Pawtucket, R.I., for Harold B. Theroux.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on May 13, 1992 on the Motion of the Debtor, Pub Dennis of Cumberland, Inc. ("Pub Dennis") for leave to foreclose on a mortgage securing an indebtedness of $27,200, and on the Objection of the mortgagor, Harold R. Theroux ("Theroux"). At issue is whether certain payments made by Theroux on behalf of the Debtor may be setoff against amounts presently outstanding under the note and mortgage related to Theroux's purchase of the Debtor's liquor license.

## BACKGROUND

Theroux operates a restaurant located in Cumberland, Rhode Island, known as the Fairway Diner, at the same location previously occupied by the Debtor. Following the December 6, 1990 Chapter 11 filing, the Debtor sold its liquor license in these business premises, with Bankruptcy Court authorization, to Theroux, who executed a promissory note in the amount of $27,200. The note secured by a mortgage on real estate located at 57 Crestwood Court, Cumberland, calls for payments of $556 per month. It is undisputed that Theroux did not meet this payment schedule, making only one payment of $525 on October 22, 1991, and another payment of $100 on February 13, 1992. As a result of Theroux's defaults, the Debtor has moved for leave to foreclose on the property, which is the only remaining asset of the Estate.

In support of his setoff argument, Theroux asserts that in a prior verbal agreement with the Debtor, the parties had agreed that Theroux would make certain payments on the Debtor's behalf which would be offset against the purchase price. Under this (alleged) arrangement, which is disputed by the Debtor, Theroux paid $14,432 to the Debtor's pre and post-petition

creditors, which he claims should now be offset against the outstanding note obligations.[1]

According to Michael Theroux, Harold's son, who we found to be a credible witness, the original agreement was for Theroux to purchase the Debtor's restaurant business. Under this scenario, the principal of the Debtor, Norman Carriere, agreed to allow expenditures by Theroux to be set off for the benefit of the Estate, against the anticipated purchase price for the restaurant. In reliance on this agreement and in order to bring the liquor license into good standing, Theroux paid the Debtor's outstanding obligations to two liquor vendors and the local taxing authority.[2]

Due to the State of Rhode Island's 1991 banking crisis, Theroux and Carriere were unable to consummate the sale of the entire business, as intended. Instead, Theroux decided to purchase only the Debtor's liquor license. According to Michael Theroux, the liquor license closing was held so hurriedly that the issue of setoff of pre-sale expenditures was not addressed.[3]

## DISCUSSION

■ Theroux asks this Court to exercise its "equitable powers" under 11 U.S.C. § 105 to permit a setoff of the amount paid by him to the Debtor's creditors, against the balance due on the note. However, he offers no statutory reference or case law to support this Court's authority to redraft or reform the terms of the parties' promissory note.

Under 11 U.S.C. § 105(a), this Court is empowered to—

"issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."

The exercise of this Court's § 105 powers is limited to situations involving extraordinary or compelling equitable circumstances. *In re Gromyko, Inc.*, 142 B.R. 20, 22 (Bankr.D.R.I.1992) (citing *In re Trang*, 58 B.R. 183, 189 (Bankr.S.D.Tex.1985)). Even considering the equities of this case, which weigh considerably in Theroux's favor, we do not believe that the legislature intended to authorize the bankruptcy court, under § 105, to rewrite the parties' loan documents, on the grounds asserted here. Accordingly, and particularly in the absence of a state law provision authorizing this Court to reform the promissory note, we rule that § 105 does not provide such power.

■ Upon consideration of the entire record, the only apparent legal ground which would permit alteration of the terms of the note to allow for a setoff of payments, is the doctrine of mutual mistake. In this jurisdiction, mutual mistake must be proved by clear and convincing evidence. *Vanderford v. Kettelle*, 75 R.I. 130, 64 A.2d 483 (1949). Moreover, the following test must be satisfied: "it must not only appear that the parties had come to a prior complete understanding respecting the essential terms of the agreement between them, but also that because of their *mutual* mistake the instrument failed correctly to express that agreement in some material respect." *Id.* at 488 (emphasis in original). However, "[a] mistake by one party with knowledge thereof by the other is equivalent to a mutual mistake; a party should not be benefitted by a mistake he knew the other had made." *Hashway v. Ciba–Geigy Corp.*, 755 F.2d 209 (1st Cir.1985), *aff'd without op.* 802 F.2d 441 (1st Cir.1986).

---

1. Of the $14,432, $1,100 was paid to two liquor vendors on behalf of the Debtor; $4,274.53 was paid to the Town of Cumberland for 1989 taxes; $3,968.28 for the 1990 tax; and $5,096 was (or will) be paid for the 1991 tax period. Some of these payments were made prior to the execution of the note and mortgage, and others were made subsequently.

2. Theroux also testified that he paid $5,500 to the Debtor's bankruptcy counsel. No explanation was given for this payment nor did Theroux include this amount in his setoff request. Accordingly, this payment is not considered in our decision.

3. Theroux also complains that he was not represented by counsel at the closing. We do not find this fact to have any bearing on our decision herein.

Based upon the entire record, and specifically the testimony of Michael Theroux, it is our opinion that there was a mistake on the part of Harold Theroux in believing that the payments he had previously made on the Debtor's behalf would be deducted from the purchase price of the liquor license. However, there is no evidence indicating that the Debtor also understood that the prior payments were to be setoff under the note, or that the Debtor was aware of Theroux's belief in this regard. Without such proof, we are unable to find by clear and convincing evidence that a mutual mistake existed. Accordingly, we rule that the promissory note, which is complete and unambiguous, represents intention of the parties and does not provide for a setoff of expenditures.

■ This ruling does not end our decision however. Pursuant to 11 U.S.C. § 503(b)(1)(A), there shall be allowed an administrative expense for—

> "the actual, necessary costs and expenses of preserving the estate...."

The post-petition payments made by Theroux on behalf of the Debtor for unpaid property taxes related to the Debtor's liquor license and to two liquor vendors, were necessary expenses for the preservation of the Estate, *i.e.* to preserve the value of the liquor license for purposes of resale.[4] Without these payments, the liquor license probably could not have been sold for $28,000 as it would not have been a license in good standing. Thus, the $12,527.81[5] expended by Theroux to bring the license into good standing was an actual and necessary expense for the preservation of the Estate, and is to be given administrative expense priority.

■ Finally, as a result of Theroux and the Debtor having mutual post-petition debts, we rule that Theroux's administrative expense claim in the amount of $12,527.81 shall be offset first against his existing arrearage under the promissory note, and thereafter as a credit against the outstanding note obligations.

Accordingly, based upon the foregoing findings and conclusions, the Debtor's Motion for Permission to Foreclose is DENIED.

## JUDGMENT

In accordance with FED.R.BANKR.P. 9021, and for the reasons set forth in the DECISION issued June 18, 1992, it is ORDERED and ADJUDGED that as a result of Harold R. Theroux and the Debtor having mutual post-petition debts, we rule that Theroux's administrative expense claim in the amount of $12,527.81 shall be offset first against his existing arrearage under the promissory note, and thereafter as a credit against the outstanding note obligations. Accordingly, the Debtor's Motion for Permission to Foreclose is DENIED.

---

**4.** Under 11 U.S.C. § 503(b)(1)(B), any tax incurred by the estate, except a tax of a kind specified in § 507(a)(7) is given administrative expense priority. The language "incurred by the estate" relates only to taxes which are incurred post-petition, *i.e.* after the estate is created. *See Costello Bros., Inc. v. Pawtucket Institution for Savings (In re Melino Cigar & Candy Co., Inc.),* 22 B.R. 703 (Bankr.D.R.I.1982). Other than the $3,185 which Theroux paid for taxes due for the first three quarters in 1991, all other payments were for pre-petition taxes and do not fit the definition of § 503(b)(1)(B). Furthermore, § 507(a)(7)(B) provides that a property tax assessed before the commencement of the case is to be given seventh priority status as an allowed unsecured claim of a governmental unit. Thus, except for our ruling herein that Theroux's payment of these taxes was a necessary expense for the preservation of the value of the liquor license, such taxes would not generally be entitled to administrative expense priority.

**5.** Although Theroux requests reimbursement for $14,438.81, $1,911 of that amount represents taxes incurred for the period August 15 through December, 1991, a period after which Theroux purchased the license. As the present owner of the liquor license, Theroux is responsible for those taxes and is not entitled to reimbursement.