Fernando E. NUNES et al.

v.

**MEADOWBROOK DEVELOPMENT CO., INC.**

No. 2002–506–Appeal.

Supreme Court of Rhode Island.

June 2, 2003.

Howard E. Walker, Providence, for Plaintiff.

Michael A. Kelly/John O. Mancini, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ., and SHEA, J. (Ret.).

## OPINION

PER CURIAM.

This case came before the Court for oral argument on March 10, 2003, pursuant to an order that had directed all parties to appear and show cause why the issues raised on this appeal should not summarily be decided. After considering the arguments of counsel and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and shall proceed to decide the case at this time.

The plaintiffs, Fernando and Nancy Nunes (plaintiffs), appeal the trial justice's order denying their request for injunctive relief barring defendants from using a purported easement over plaintiffs' property.[1] For the reasons set forth below, we sustain plaintiffs' appeal.

This matter arose from plaintiffs' purchase of property at 4 Promontory Knoll, on assessor's plat 59, lot No. 25, Cumberland, from Meadowbrook Development Co., Inc. (defendant). The purchase and sale agreement (PSA) contained a standard provision requiring delivery of a warranty deed conveying good and clear title, except easements and restrictions of record. It contained an addendum stating that "the westerly and northerly lot lines may be revised in order to accommodate the lot line revisions for Assessor's Plat 59, Lots 25, 77, 78, 79 and 80. Lot size will not become smaller than (4½) four and one half acres." The plaintiffs agreed to redraw the lot lines to accommodate defen-

---

1. In a judgment entered July 11, 2002, a *lis pendens* on defendant's property was ordered removed. Also, plaintiffs were entitled to reasonable compensation for any diminution in value of their property. However, the Superi-or Court ordered entry of final judgment concerning the injunction and other equitable claims pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.

dant's plan to extend the Promontory Knoll cul-de-sac, so that defendant could get access to its lots without using Diamond Hill Road. However, defendant withdrew its petition before the Cumberland Planning Board. On May 7, 1999, defendant issued the plaintiffs a deed that did not refer to the disputed easement.[2]

The basis for defendant's claim to the easement relates to a series of transactions preceding the conveyance of lot No. 25 to plaintiffs. In 1992, Robert Doorley owned the land abutting lot No. 25 to the west, including assessor's plat 59, lot No. 27 and lot Nos. 77 through 81. On May 5, 1994, defendant acquired assessor's plat 59, lot No. 25. On September 4, 1996, defendant granted Doorley the easement across lot No. 25, which was recorded in the Cumberland land-evidence records on September 13, 1996. On September 6, 1996, Doorley granted himself, as owner of lot No. 27 and lot Nos. 77 through 81, a driveway and utility easement across the back of those lots along their easterly boundary with lot No. 25. Then, on February 19, 1998, Doorley conveyed the entire property to defendant, subject to the easement over lot No. 25.[3] The deed was recorded on February 24, 1998. As noted above, the closing on plaintiffs' purchase was completed on May 7, 1999. In 2001, defendant resumed using the easement over lot No. 25.

The plaintiffs sued for injunctive relief, claiming that defendant had violated the warranty covenants in the deed. They contended that the deed was a final expression of the parties' agreement, and trumped the provisions of the PSA. Moreover, they submitted that the easement was destroyed under the merger rule after defendant held unity of title to lot No. 25 and the Doorley property. The defendant asserted that it had adequately reserved the easement in the conveyance or, in the alternative was entitled to an easement by necessity.

■ At a nonjury trial, an expert in real estate conveyance testified that the deed conveying the Doorley property to defendant was subject to the easement that defendant granted to Doorley over lot No. 25. The deed was recorded in the Cumberland land-evidence records on February 24, 1998. At that point, both the dominant and servient estates were vested in one owner, defendant. Under the merger doctrine, when both the dominant and servient estates are vested in one party, the easement is extinguished. *Kenyon v. Nichols,* 1 R.I. 411, 413 (1851). However, citing to this Court's decision in *Catalano v. Woodward,* 617 A.2d 1363 (R.I.1992), the expert said that the language in the deed to defendant was sufficient to reserve the easement over lot No. 25, and opined that the easement is appurtenant and runs with the land.[4]

■ The trial court ruled for defendant, finding that the disputed easement was valid. The trial justice stated, "[w]e have testimony * * * that any reasonably prudent and competent title attorney who examined the land-evidence records prior to the closing of this matter * * * would have seen the easements clearly recorded

---

2. The easement served the same purpose as the proposed extension of Promontory Knoll. It extended from defendant's lots to Promontory Knoll, crossing over plaintiffs' property.

3. Although the properties were transferred to defendant, for clarity they are referred to from here on as "Doorley property."

4. The deed to defendant stated, "subject to * * * easements in * * * Bk. 682, Pg. 89 * * *."

* * *." He decided that the easement was not destroyed under the merger doctrine, and opined that the present facts are distinguishable from cases subject to the general merger principle. We disagree.

It is well settled that "the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Perry v. Garey,* 799 A.2d 1018, 1022 (R.I.2002) (quoting *Bernier v. Lombardi,* 793 A.2d 201, 203 (R.I.2002)). However, questions of law are reviewed *de novo. Id.* at 1023.

On appeal, plaintiffs argue that the disputed easement was extinguished under the merger rule because unity of title was once vested in defendant. The chief case on point is *Catalano.* In *Catalano,* 617 A.2d at 1366, a landowner asserted the right to an easement over two neighboring parcels. The landowner contended that the grant of the burdened properties was specifically subject to the reservation of an easement in favor of the remaining parcels of land. *Id.* This Court ruled:

"The present case is distinguishable from [the] general [merger] principle. When a portion of land is granted from a larger parcel, the grantee can successfully claim rights of easement to a remaining portion, if it had traditionally been used to benefit his land and a right of way has been delineated on a plat or subdivision * * * that * * * has been properly recorded and referred to in the deed." *Id.* at 1367.

The deed to the servient estate referred to a subdivision plan depicting the easement, which was recorded before the conveyance. *Id.* at 1366. Although "no easement can be created over a section of land that is unified in the possession of one owner," the buyers were on notice that they took the land subject to an easement. *Id.* at 1367. Thus, to give effect to the intent of the parties at the time the property was conveyed, this Court ruled that the easement was not destroyed. *Id.* at 1366–67.

However, this Court distinguished *Catalano* from the general merger principle because that case involved a grantee that claimed a right to the easement. But when a grantor claims the right to an easement after conveying an encumbered parcel, as defendant did in this case, the merger principle applies.

"Generally, when a single owner is in possession of two contiguous parcels of land, one of which has historically been used for the benefit of the other, and that owner conveys the encumbered parcel, he cannot retain a right to continue the use of the conveyed parcel without a specific reservation." *Catalano,* 617 A.2d at 1367 (citing *Kenyon,* 1 R.I. at 413).

In this case, defendant did not include a specific reservation for the easement in the deed conveying lot No. 25 to plaintiffs. The plaintiffs' deed was silent on easements, and unlike *Catalano,* did not refer to a recorded plat card or subdivision map delineating the easement. Thus, we rule that the easement in this case did not survive the merger and was extinguished before defendant conveyed lot No. 25 to plaintiffs.

The plaintiffs also argue that the warranty deed actually delivered, which was silent on easements, superceded the PSA. Under Rhode Island law, once a warranty deed is accepted, it "becomes the final statement of the agreement between the parties and nullifies all provisions of the purchase-and-sale agreement." *Haronian v. Quattrocchi,* 653 A.2d 729, 730 (R.I.1995)(per curiam)(quoting *Deschane v. Greene,* 495 A.2d 227, 229 (R.I.1985)). The

doctrine does not apply if there is proof of fraud or mutual mistake. This Court has ruled that when a party seeks "the reformation of a deed on the ground of mutual mistake, it [is] necessary to establish such mistake by clear and convincing evidence before a reformation of such an instrument should be granted." *Vanderford v. Kettelle*, 75 R.I. 130, 139, 64 A.2d 483, 487 (1949); *see also Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300, 302 (R.I.1986). "To warrant reformation, it must appear that by reason of a mistake, *common to the parties,* their agreement fails in some material respect correctly to reflect their prior completed understanding." *Dubreuil*, 511 A.2d at 302. (Emphasis added.) Thus, the parties' intent is a determinative factor. *Catalano*, 617 A.2d at 1367 ("[i]t has long been the policy of this court to ascertain the intent of the parties when construing written instruments").

■ One means of inferring intent is to look to the PSA and attached addenda, and plat cards that are referred to in the deed. The PSA indicated that the parties did intend to redraw the lot lines to allow extension of the Promontory Knoll cul-de-sac. However, the agreement held that plaintiffs would be compensated with comparable property, and made no provision for an easement in lieu of the expansion. When a plat is referred to in a deed for a description of the premises intended to be conveyed, it becomes for this purpose a part of the deed. *See Kenyon v. Nichols*, 1 R.I. 411 (1851). However, the easement was not depicted on the town plat card that plaintiffs' deed referred to.

■ "To warrant reformation the credibility of the witnesses and the weight of the evidence must be such as clearly to convince the court without hesitancy of the truth of the precise facts in issue." *Vanderford*, 75 R.I. at 142, 64 A.2d at 489. We find that the mistake in omitting the ease-

ment on the deed to plaintiffs was not mutual. Thus, defendant did not demonstrate that the deed failed "in some material respect correctly to reflect their prior completed understanding." *Dubreuil*, 511 A.2d at 302.

■ The defendant argues that it has an easement by necessity. Whether an easement exists by necessity is a question of fact. This Court has held, "a trial justice sitting as a fact-finder is charged with the duty to draw inferences from established facts and that his or her 'conclusion will be accepted by this [C]ourt if the inference he [or she] drew was reasonable even though other equally reasonable inferences might have been drawn.'" *Reitsma v. Pascoag Reservoir & Dam, LLC*, 774 A.2d 826, 845 (R.I.2001)(quoting *Jerry Brown Farm Association, Inc. v. Kenyon*, 119 R.I. 43, 51, 375 A.2d 964, 968 (1977)).

■ This Court has ruled that "the test of necessity is whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." *Wiesel v. Smira*, 49 R.I. 246, 250, 142 A. 148, 150 (1928). Moreover, this Court should consider whether "a substitute could be procured without unreasonable trouble or expense." *Id.*

We rule that the trial justice erroneously found an easement by necessity. The court relied on expert testimony that passage from Diamond Hill Road to the Doorley properties was unsafe because of the presence of gas pipelines and a sharp slope. However, while the lots were owned by Doorley there were plans before the Cumberland Town Planning Board to build houses fronting on Diamond Hill Road. In a meeting before the board, an engineer representing Doorley stated his intent to pursue curb cut permits to build

driveways over Diamond Hill Road. He also addressed concerns about the gas lines, saying that no blasting was anticipated. Thus, we conclude that access to the lots via Diamond Hill Road was feasible, and defendant sought access via Promontory Knoll merely to avoid inconvenience and expense.

We find that the trial justice overlooked and misconceived material evidence and was clearly wrong in concluding that there was a valid easement by deed and necessity.

For the foregoing reasons the appeal is sustained, the judgment appealed from is reversed, and the papers of this case are remanded to the Superior Court.

Justice FLAHERTY did not participate.