EAGLE AIR, INC., an Alaska corporation, Taggares Helicopters, Inc., a foreign corporation, Taggares Leasing, Inc., a foreign corporation, and Stanley Taggares and Delores Taggares, husband and wife, and the marital community composed thereof, Appellants,

v.

CORROON AND BLACK/DAWSON AND COMPANY OF ALASKA, INC., a foreign corporation, Appellee.

No. 5488.

Supreme Court of Alaska.

Aug. 6, 1982.

James E. Douglas and Michael F. Ford, Baxter and Douglas Law Offices, Juneau, for appellants.

Jon R. Hunt, A. Richard Dykstra and Douglas K. Haughton, Stafford, Frey & Mertel, Seattle, and William G. Royce, Sitka, for appellee.

Before BURKE, C. J., RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

CONNOR, Justice.

This is an appeal from a superior court judgment piercing the corporate veil to hold defendants jointly and severally liable for approximately $300,000 of insurance premiums advanced by plaintiff on behalf of defendants and for costs and attorneys' fees.

## I. FACTS

Appellee Corroon and Black/Dawson and Company of Alaska, Inc. (Dawson) is an insurance broker. It obtains commitments for insurance from insurance companies, then bills its clients for premiums and a brokerage commission. If a client fails to pay the billing before the insurance company requires payment, Dawson must advance the premiums and seek reimbursement from the client.

The appellants are Stanley Taggares, the marital community of Stanley and Delores Taggares, Taggares Helicopters, Inc., Taggares Leasing, Inc., and Eagle Air, Inc. The appellants collectively will be referred to as "Taggares" where practicable.

Stanley Taggares is a Washington resident. He and his wife[1] own Taggares Ranches, a non-corporate proprietorship operating in eastern Washington. In July, 1974, Stanley Taggares formed Taggares Helicopters, Inc., a Washington corporation. He owns 998 of the 1,000 shares issued and outstanding, and is the president and director of the corporation. Although at one time Taggares Helicopters had aircraft and conducted charter operations, since 1976 it has functioned primarily as a holding company and accounting office for its subsidiaries and other related enterprises. Taggares Helicopters owns a cattle ranch on Sitkinak Island, Alaska.

Taggares Leasing, Inc., an Oregon corporation, was formed in conjunction with Taggares Helicopters for tax purposes.[2] Taggares Helicopters owns all of the issued and outstanding stock of Taggares Leasing. Stanley Taggares is president, manager and a director of Taggares Leasing.

In early 1975, Taggares Helicopters purchased all of the voting shares of Eagle Air, Inc., an Alaska corporation licensed to engage in the air charter and taxi service. After the acquisition, Eagle Air engaged in helicopter and fixed-wing operations, as well as a car rental business, all headquartered in Sitka, Alaska. Most of the equipment used by Eagle Air was leased from Taggares Leasing, and Eagle Air was Taggares Leasing's principal customer. As of March, 1980, Eagle Air ceased its operations and substantially all of its assets have been removed from Sitka. Stanley Taggares is also president, manager and a director of Eagle Air.

Prior to its acquisition by Taggares Helicopters, Eagle Air had been insured through Dawson. Dawson continued to handle Eagle Air's insurance and, in the fall of 1975, began to handle insurance for the other related enterprises and individuals. All of the accounts remained under the name of "Eagle Air, Inc." and billings were invoiced to Eagle Air.

By December 28, 1976, premiums totalling $194,261.02 were owed to Dawson. A promissory note reflecting the indebtedness and setting up a payment schedule was signed by Stanley Taggares on behalf of Eagle Air and Taggares Leasing. He refused to sign the note in his individual capacity. Four payments, totalling approximately $30,000, were made on the promissory note, leaving a balance due of $164,509.24. No further payments were made and consequently the note was in default.

After execution of the promissory note, insurance coverage for Taggares was continued through Dawson on an "open account" basis. The total amount in premiums due and unpaid on the open account was $113,531.02.

Dawson filed suit to recover the insurance premiums. Count I of its amended complaint sought recovery for amounts due under the promissory note; count II sought recovery for amounts due on the open account; and count III sought to "pierce the corporate veil" to hold the corporate and individual defendants liable under both the note and the open account.[3] Taggares counterclaimed, alleging that Dawson failed to perform its promise to obtain insurance at the lowest rates available.[4]

1. Delores Taggares was withdrawn as an individual defendant. Dawson seeks to hold the assets of the marital community, under the community property laws of the State of Washington, liable.

2. In order to reduce tax liability, Taggares Leasing would purchase equipment in Oregon, which has no state sales tax, and lease it to out-of-state customers. The superior court noted that this was a legitimate business purpose.

3. The amended complaint did not seek to hold Taggares Helicopters liable for its subsidiaries' debts; however, the complaint was amended at trial to include such an allegation.

4. Taggares' second counterclaim, for misrepresentation regarding the deductible rate, was abandoned on appeal. Taggares' third counter-

Before trial, Dawson moved for a prejudgment writ of attachment. At the conclusion of a full hearing on the writ, the trial court found that the primary assets of the Taggares corporations and of the individuals had been removed from the state.[5] In order to provide security for satisfaction of a judgment that might be recovered, the court issued the writ which, among other items, attached the Sitkinak Island property owned by Taggares Helicopters.

After trial, Superior Court Judge Duane Craske prepared a very thorough and well-reasoned Memorandum of Decision, finding in favor of Dawson on all three counts of the complaint and on the counterclaim. Judgment was entered against the defendants, jointly and severally, for the amount of the promissory note and the open account, plus interest. Judge Craske also awarded Dawson attorneys' fees and costs, including costs connected with the prejudgment writ of attachment, expert witness fees, and travel expenses for Dawson's Washington attorneys. On Dawson's motion, the judgment was later amended to include an order for sale of the property previously attached.

Taggares argues six issues on appeal: first, that Taggares Helicopters should not be held liable for the debts of its subsidiaries; second, that Stanley Taggares' personal and marital community assets should not be held liable for the debts of the corporations; third, that Dawson failed to prove that it actually advanced the insurance premiums on behalf of Taggares; fourth, that Taggares' counterclaim for breach of duty or breach of contract was supported by the evidence; fifth, that certain costs were erroneously awarded to Dawson; and, sixth, that Dawson's motion to amend judgment should have been denied.

## II. PIERCING THE CORPORATE VEIL

In general, a subsidiary corporation is considered an entity separate and distinct from its parent,[6] and a corporation is considered an entity separate and distinct from its shareholders.[7] The trial court determined that the present case was an appropriate one to "pierce the corporate veil" to hold Taggares Helicopters, the parent corporation, and Stanley Taggares, the individual shareholder, liable for the amounts due from Eagle Air and Taggares Leasing on the promissory note and from Eagle Air on the open account. We have often discussed the doctrine, both in the context of holding a parent corporation liable for the debts of its subsidiary[8] and in the context of holding an individual shareholder liable for the debts of its corporation.[9]

In our most recent case discussing the theories for piercing the corporate veil, we stated that the "quantitative approach" de-

claim, for fraud in the inducement, was abandoned at trial.

5. T. J. Freeburg, assistant manager of Eagle Air, testified that Stanley Taggares directed him to sell assets and have them removed from Sitka. During the 1979 flying season, Eagle Air had three fixed-wing aircraft and three helicopters at the Sitka airport. As of 1980, there was only one plane left at the Sitka airport, and that had already been attached by another creditor. There was one helicopter in Talkeetna, but there were no plans to return it to Sitka as it was in for repairs. Freeburg also testified that within two months of the hearing equipment, tools, and supplies were removed from the Eagle Air facility at the Sitka airport.

6. *Volkswagenwerk, A. G. v. Klippan, GmbH,* 611 P.2d 498, 505 (Alaska 1980), *cert. denied,* 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980).

7. *Quinn v. Butz,* 510 F.2d 743, 757–58 (D.C.Cir. 1975).

8. *General Constr. Co. v. Tyonek Timber, Inc.,* 629 P.2d 981 (Alaska 1981); *Volkswagenwerk, A. G. v. Klippan, GmbH,* 611 P.2d 498 (Alaska 1980), *cert. denied,* 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980); *Bendix Corp. v. Adams,* 610 P.2d 24 (Alaska 1980); *Jackson v. General Electric Co.,* 514 P.2d 1170 (Alaska 1973).

9. *Uchitel Co. v. Telephone Co.,* 646 P.2d 229 (Alaska 1982); *Shepherd v. Bering Sea Originals,* 578 P.2d 587 (Alaska 1978); *Elliott v. Brown,* 569 P.2d 1323 (Alaska 1977). *See also Hoss v. Purinton,* 229 F.2d 104 (9th Cir. 1955), *cert. denied,* 350 U.S. 997, 76 S.Ct. 547, 100 L.Ed. 861 (1956).

veloped in the parent-subsidiary context was equally applicable in the shareholder-corporation context. *Uchitel Co. v. Telephone Co.*, 646 P.2d 229, at p. 235 (Alaska 1982). In *Uchitel*, we again listed eleven factors relevant in determining whether the subsidiary should be treated as a mere instrument of the parent.[10] We also devised a list of six analogous factors to be considered when a shareholder is charged with liability for the corporation's debts.[11] The trial court in the instant case discussed the relevant factors in detail, and found that all of them were present in both contexts.

■■■■■ Taggares does not appear to challenge the trial court's findings regarding these factors. Rather, Taggares argues that the findings merely establish *control*, and that the additional element of fraud or wrongdoing must be shown before liability can attach.[12] Support for this argument is found in two of our recent cases, where we

relegated the "quantitative" approach to secondary importance. The more important consideration was whether the corporate form was used "to defeat public convenience, justify wrong, commit fraud, or defend crime." *General Constr. Co. v. Tyonek Timber, Inc.*, 629 P.2d 981, 983 (Alaska 1981), *quoting Bendix Corp. v. Adams*, 610 P.2d 24, 32 (Alaska 1980).

The trial court's fundamental finding was that Stanley Taggares abused the corporate structures to the substantial prejudice of Dawson. Specifically, the court found that the assets of Eagle Air and Taggares Leasing had been drained through "complex financial transactions,"[13] resulting in inadequate capital to satisfy corporate debts. Taggares argues that the financial irregularities were not the cause of Dawson's loss. Instead, Taggares attributes the corporations' insolvency to the decline in pipeline activity.

---

**10.** The factors in the parent-subsidiary context are as follows:

"(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed."

*Jackson v. General Electric Co.*, 514 P.2d 1170, 1173 (Alaska 1973).

**11.** The factors in the shareholder-corporation context are as follows:

"(a) whether the shareholder sought to be charged owns all or most of the stock of the corporation;

(b) whether the shareholder has subscribed to all of the capital stock of the corporation or otherwise caused its incorporation;

(c) whether the corporation has grossly inadequate capital;

(d) whether the shareholder uses the property of the corporation as his own;

(e) whether the directors or executives of the corporation act independently in the interest of the corporation or simply take their orders from the shareholder in the latter's interest;

(f) whether the formal legal requirements of the corporation are observed."

*Uchitel Co. v. Telephone Co.*, 646 P.2d 229, at p. 235 (Alaska 1982).

**12.** There is no merit in Taggares' argument that actual fraud is required. *See Anderson v. Abbott*, 321 U.S. 349, 357, 64 S.Ct. 531, 535, 88 L.Ed. 793, 800 (1944).

**13.** "Complex financial transactions" evidently refers to the numerous "loans" made between the various appellants, resulting, among other things, in Taggares Helicopters owning Taggares Leasing over $1,000,000 and Taggares Leasing owing Eagle Air $1,500,000. There was also evidence of a check kiting scheme (or, as Taggares preferred to call it, a "sum float").

Under Civil Rule 52(a), we are bound by the trial court's findings unless they are clearly erroneous.[14] Our review of the evidence leads us to conclude that the trial court's finding that Stanley Taggares drained the corporations of their assets was not clearly erroneous. Thus, the additional element of wrongdoing by Taggares has been shown. In a similar situation, the Washington Supreme Court held that evidence of stripping a corporation's assets could be considered in deciding whether to pierce the corporate veil. *Morgan v. Burks*, 93 Wash.2d 580, 611 P.2d 751, 755 (1980).

We conclude that the trial court was correct in piercing the corporate veil to hold Taggares Helicopters and Stanley Taggares jointly and severally liable with the other defendants on the promissory note and the open account.

One additional issue involving Dawson's action to recover on the open account deserves brief mention. At trial, Taggares challenged Dawson's claim that it had advanced premium payments to insurance companies on Eagle Air's behalf.[15] Dawson offered testimonial and documentary evidence to prove that it had in fact paid the premiums.[16] The court made no separate finding on this issue. Rather, the first sentence of its Findings of Fact begins: "This is an action to recover insurance premiums advanced by Corroon & Black Dawson Company ...." The court later referred to premiums "advanced" and "furnished" by Dawson. In light of the evidence presented by Dawson, we conclude that the trial court's implicit factual finding that the premiums were paid was not clearly erroneous.

## III. TAGGARES' COUNTERCLAIM

Taggares' counterclaim alleged that Dawson failed to provide insurance for Eagle Air at the lowest rates available. As a result, Eagle Air's cost of doing business was higher than it should have been, causing it to lose out on several job bids. Taggares sought to hold Dawson liable for the lost income under alternative theories in contract and tort.

The trial court found that Taggares failed to prove that Dawson contracted to obtain insurance at the lowest rates in the state. Taggares offered no written evidence to show that Dawson's agent had made such a promise. The agent denied the promise. We have held:

> "Where the existence of an oral contract and the terms thereof are the points in issue and the evidence is conflicting, it is for the trier of the facts to determine whether the contract did in fact exist, and if so, the terms thereof."

*Jackson v. White*, 556 P.2d 530, 532 (Alaska 1976). The court heard the testimony and had the opportunity to judge the credibility of the witnesses. We cannot say that the court's finding was clearly erroneous. Alaska Civ.Rule 52(a).

---

**14.** Alaska Civil Rule 52(a) provides in relevant part:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

A clearly erroneous finding is "one which leaves the supreme court with a definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding." *Frontier Saloon, Inc. v. Short*, 557 P.2d 779, 781–82 (Alaska 1976) (footnote omitted).

**15.** In an action on an open account, the person seeking recovery has the burden to prove the correctness of the account and each item therein. *Holt v. Western Farm Services, Inc.*, 110 Ariz. 276, 517 P.2d 1272, 1274 (1974); *Gardner and Beedon Co. of Springfield v. Cooke*, 267 Or. 7, 513 P.2d 758 (1973).

**16.** Dawson's evidence on the premium payment issue consisted of: (1) the testimony of Dawson's vice-president and general manager, who claimed familiarity with the company's bookkeeping and billing procedures; (2) Dawson's accounting file for Eagle Air, Inc., which contained copies of the statements and invoices sent monthly to Eagle Air from June, 1977, to March, 1979; and (3) a computer-printed ledger of Dawson's accounts with its several insurance carriers, further categorized by individual customers, showing the total premiums paid to each insurance carrier and the respective commission fees retained by Dawson.

■ The trial court also concluded that Dawson was not liable under a tort theory for breach of duty. Taggares argued that Dawson owed a duty to obtain insurance at the best rates available and that it failed to do so. An insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in procuring insurance. *Quality Furniture, Inc. v. Hay,* 61 Haw. 89, 595 P.2d 1066, 1068 (1979). This does not mean that an agent has an absolute duty to obtain the lowest possible rates. At trial, Taggares failed to show that the premium rate was unreasonable. Moreover, the evidence showed that the premium rate may have in fact been the best available.

We conclude that the trial court correctly found against Taggares on the counterclaim, under both the contract and tort theories.

## IV. COSTS

■ Taggares next argues that the trial court erroneously awarded certain costs to Dawson. We have repeatedly stated that we will affirm a trial court's award of costs under Civil Rule 79(b) unless there has been a clear abuse of discretion. *Davis v. Hallett,* 587 P.2d 1170, 1171 (Alaska 1978); *Kaps Transport, Inc. v. Henry,* 572 P.2d 72, 77 (Alaska 1977).

### A. *Prejudgment Writ*

Taggares' first objection is to costs awarded in connection with the prejudgment attachment of Taggares Helicopter's Sitkinak Island property. A week after the attachment order was issued, the trial court issued a writ of assistance appointing Willis Donnally to supervise and prevent the removal or destruction of the assets located on Sitkinak Island. Taggares was ordered to pay the costs of Donnally's employment ($651.00), flight expenses ($1,763.66), and food and lodging ($827.96).

■ We find no abuse of discretion here. Given Taggares' previous conduct of removing assets from the state, the court

was justified in concluding that additional protective measures were necessary to make the attachment a bona fide remedy. Civil Rule 79(b) provides in part that "[i]n addition to the items allowed as costs by law and in these rules, a party shall be allowed any other expenses necessarily incurred in order to enable a party to secure some right accorded him in the action or proceeding."

■ The amounts awarded here were not unreasonable. The $651.00 compensation was based upon the $21.00 per day subsistence rate allowed witnesses who cannot return home from day to day.[17] The $1,763.66 airfare was the actual cost of flying in an Alaska State Trooper (for service and posting), Donnally, and supplies to Sitkinak Island, which is approximately fifty miles from Kodiak. The $827.96 represented actual food and lodging costs, and miscellaneous expenses were disallowed since they could be deducted from the $21.00/day compensation. Since all of these fees were justified, and there was evidence that they were necessary due to Taggares' conduct, the court did not abuse its discretion under Rule 79(b).

### B. *Expert Witness Fees*

■ The trial court taxed an expert witness fee of $950.00 to Taggares for the 38 hours that Dawson's expert spent in court observing and testifying. Former Administrative Rule 9(c)[18] limited such additional compensation for expert witnesses to "$25.00 per hour while so employed *and testifying.*" (emphasis added). We recently held that "[a]bsent extraordinary circumstances, such as bad faith or reprehensible conduct, not existing here, the prevailing party may receive as costs only those expert witness fees specified in Administrative Rule 9(c); ... fees for necessary preparation time for an expert who does testify may not be recovered." *Miller v. Sears,* 636 P.2d 1183, 1195 (Alaska 1981) (footnote omitted). Thus, the court's award of expert

---

17. Former Administrative Rule 9(a).

18. Administrative Rule 9(c) has been recodified and now appears as Administrative Rule 7(c).

witness fees should have been based only on the time the expert was actually testifying. Accordingly, the case must be remanded for a modification of the cost award.[19]

### C.  Travel Expenses

■ Costs were further taxed against Taggares in the amount of $659.20. This sum is the actual cost of air travel to trial in Sitka, from Washington, for Dawson's two Seattle-based attorneys.  In *Davis v. Hallett*, 587 P.2d 1170 (Alaska 1978), we upheld an award of costs which included not only travel expenses, but also food and lodging expenses incurred by the prevailing party's out-of-town attorney.  Noting that the attorney's office was located in Juneau and his appearance in court was in Nome, we held that these expenses were "necessarily incurred" within the meaning of Civil Rule 79(b).  We see no reason to apply a different rule in this case.  Certainly the trial judge was in a better position than we are to determine whether Dawson's Washington attorneys were "necessary" to the proceeding.  Therefore, the award of air travel costs was not an abuse of discretion.

### V.  AMENDED JUDGMENT

■ Almost two months after the trial court entered judgment against Taggares, Dawson moved to amend the judgment to include an order of sale of the attached property pursuant to AS 09.40.090.  After a hearing on the motion, the trial court issued an order to amend the judgment, nunc pro tunc, to include an order for sale.  The court found that under AS 09.40.090 Daw-

son had a right to have a power of sale in the judgment and that Dawson's failure to request the provision for sale was inadvertent.  The court therefore granted the relief under Civil Rule 60(b).[20]

■ AS 09.40.090 provides in pertinent part: "When plaintiff recovers judgment ... the court shall order the property to be sold to satisfy the plaintiff's demands."  Taggares cites three Alaska territorial cases interpreting identical language in the predecessor to this statute for the general proposition that a failure to include an order for the sale of the attached property in the judgment releases the attached property.[21]  However, the fact that an order for sale is required in the judgment does not mean the judgment cannot be amended to include such an order.  The Oregon Supreme Court, dealing with the identical situation, held that a judgment can be amended to include an order for sale of attached property where all the parties whose rights could be affected by the amendment are before the court, have notice of the proposed amendment, and have not changed their position in reliance on the original judgment entry.  *Hudelson v. Sanders-Swafford Co.*, 111 Or. 600, 227 P. 310, 312 (1924), *rev'd* on other grounds in *Godell v. Johnson*, 244 Or. 587, 418 P.2d 505, 507 n.8 (1966).  In the present case, the parties had notice, were still before the court, and there was no showing by Taggares that he changed his position in reliance on the fact that only a personal judgment was originally entered against him. We conclude that the trial court properly

---

**19.**  We note that the Clerk's Ruling on Taxation of Costs and Attorneys' Fees, which was adopted by the court, states that the expert spent six hours testifying.  Dawson's attorney's affidavit states that only a part of the six hours was spent testifying.  Taggares maintains that the testimony lasted approximately one hour.  The trial court should determine on remand how much time Dawson's expert actually spent testifying.

**20.**  Civil Rule 60(b) reads in pertinent part:
"(b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect; ..."
The court did not state its reasons for finding that the failure to request the inclusion of an order of sale in the original judgment was inadvertent or excusable neglect.  However, we conclude that this finding was not an abuse of the court's broad discretion under Rule 60(b), especially in light of the language of AS 09.40.-090 which makes it appear as though no request is necessary.

**21.**  *Love v. Pavlovich*, 222 F. 842 (9th Cir. 1915); *Stevenson v. Hargraves*, 5 Alaska 656 (Alaska 1917); *Belleview v. Wittenberg*, 5 Alaska 515 (Alaska 1916).

exercised its discretion in granting Dawson's motion to amend the judgment to include the order for sale.

The judgment of the superior court is AFFIRMED in all respects, except for its award of expert witness fees. As to that issue, the case is REMANDED for a modification of the cost award consistent with our holding in *Miller v. Sears*, 636 P.2d 1183 (Alaska 1981).