**FLEET CONSTRUCTION CO., INC.**

v.

**AETNA LIFE & CASUALTY CO., et al.**

**No. 98–458–Appeal.**

Supreme Court of Rhode Island.

March 14, 2000.

Dennis S. Baluch, Providence, for Plaintiff.

Peter Lawson Kennedy, Providence, John J. Geary, Plymouth, MA, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

We address here whether an insurer and an insurance agency breached any duty owed to their insured customer, a construction contractor, when they supposedly overcharged the contractor for bond coverages that the contractor was required to post on various construction projects. The plaintiff, Fleet Construction Company (Fleet), appeals from a final judgment in favor of the defendants, Aetna Life and Casualty Co. (Aetna), and Goodrich–Blessing Agency, Inc. (Goodrich), after the Superior Court granted their motions for summary judgment. Following a prebriefing conference, we directed Fleet to show cause why the issues raised in its appeal should not be summarily decided. Having reviewed the parties' original submissions, supplemental memoranda, and oral arguments, we are of the opinion that no cause has been shown and that this appeal can be decided without further briefing and argument.

As a site contractor working on certain construction projects, Fleet was required to obtain bonding and other insurance to work on these projects. Goodrich was the insurance agent that placed the bond coverages on behalf of Fleet with the insurer, Aetna. Fleet claims that it was entitled to obtain the pricing benefits of a so-called Class A contractor rating because it "perform[ed] projects that are generally less complex or difficult than those which would demand the more expensive Class B rating."[1] Despite its alleged entitlement to a Class A rating, Fleet asserts that defendants charged it premiums at the higher Class B rates. As a result, Fleet filed a complaint against defendants seeking reimbursement for alleged premium overcharges on the bonding. Both defendants answered the complaint and Goodrich filed a counterclaim, asserting that Fleet owed it $42,784 for unpaid bond premiums.

Thereafter, Goodrich moved for partial summary judgment concerning counts 1 through 4 of Fleet's complaint. Goodrich contended and Fleet admitted that whenever Fleet had entered into a construction contract the awarding authorities had reimbursed it for the amount of the bond premiums in question. Thus, Goodrich claimed Fleet had suffered no damages as a result of the alleged overcharges. Aetna joined in Goodrich's motion at the hearing and a Superior Court motion justice granted defendants' motion, stating:

"The affidavits have indicated, and the evidence in the record indicates, that the plaintiff has been—has recouped the

---

**1.** In pricing the bond premiums at issue here, defendants used the rating system of the Surety Association of America's *Rate Manual of* *Fidelity, Forgery and Surety Bonds'* Contract Bonds Section (March 2, 1987 and July 15, 1977 Revisions).

amount of money that it claims that it was overcharged. The relief that the plaintiff sought in Counts 1 through 4 was the sum of money that it was overcharged.

"Based upon the evidence in this matter, the Court finds that there are no material facts in dispute. The Court finds that the plaintiff has failed to establish his entitlement as a matter of law to the amounts of money that he has already received."

Thereafter, defendants filed a joint motion for partial summary judgment with respect to the remaining count 5 of Fleet's complaint. Count 5 alleged that "[b]ecause of the overcharges of Defendants * * *, Plaintiff was not the low bidder in connection with several projects during the period from 1985 to date * * *. Plaintiff was not awarded the contracts * * * and suffered a loss of profit." The defendants argued that they owed no duty to Fleet to obtain for it the lowest premium rate for construction bonds, or to charge Fleet premiums at Class A rates instead of Class B rates. Fleet countered that defendants' breach of duty was their misclassification of the construction projects in question as Class B versus Class A projects.

A different Superior Court motion justice heard and granted the summary judgment motion with respect to count 5 of the complaint, relying upon *Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300 (R.I. 1986). The motion justice concluded that defendants owed no duty to provide Fleet with lower bond-premium rates than the ones that were charged to Fleet.

Goodrich then moved for summary judgment on its counterclaim, seeking $42,784 for unpaid bond and insurance premiums on the insurance it provided to Fleet. Fleet objected to the motion and argued that Goodrich's motion was barred by the law-of-the-case doctrine because it was identical to Goodrich's earlier-filed motion that had been denied. But a Superior Court motion justice ruled that "the state of the record ha[d] changed dramatically" since the denial of the earlier motion and concluded that, given the granting of defendants' summary-judgment motions in the interim, Fleet lacked any defense to the breach-of-contract counterclaim for unpaid premiums. Thus, she granted Goodrich's motion and entered a final judgment in the amount of $72,603.98, including interest.

■ On appeal, Fleet argues that the Superior Court erred in granting the various summary-judgment motions that defendants filed in this matter. First, Fleet asserts that the first motion justice erroneously granted summary judgment on counts 1 through 4 of its complaint. Fleet suggests that it was damaged by defendants' alleged pattern of overbilling and, as such, it was entitled to recover those overcharges from them. Although Fleet admits that it passed these bonding charges on to its customers, it argues that the inflated costs of its bids "hurt the competitiveness of" its business and caused it to lose at least one lucrative contract. Fleet also contends that the motion justice's lack-of-duty ruling allowed defendants to profit from their wrongdoing. In its supplemental statement, Fleet asserts that its ability to make a profit from third parties by passing on its insurance costs to them should not lessen defendants' liability. Relying on the collateral source doctrine, Fleet argues that defendants, as tortfeasors, should not be permitted to "reap the benefit of an injured party's ability to recoup some of its losses from a third party."

■ The collateral source doctrine applies to tort actions when it is demonstrated that benefits have been received by an injured party from sources other than the tortfeasor. *Moniz v. Providence Chain Co.*, 618 A.2d 1270, 1271 (R.I.1993). The doctrine mandates the negligent party " 'to pay in full the damages suffered by the injured person without credit for any amounts received by the injured person from sources independent' of the negligent

party." *Id.* (quoting *Colvin v. Goldenberg,* 108 R.I. 198, 202, 273 A.2d 663, 666 (1971)). The doctrine is not applicable in this case, however, because Fleet failed to prove that defendants were negligent or that they committed any other tort.

■ Here, while it was assumed for purposes of the summary-judgment motions that defendants had overcharged Fleet for the bonds, Fleet failed to show that these overcharges were illegal or that defendants breached some contractual provision or legal duty that they owed to it when they charged Class B premium rates for the bonds they provided instead of Class A premium rates. In this situation, no statute, contract provision, or other legal obligation dictated the particular rate or method used by defendants to price the bonds for which Fleet was charged. Thus, if Fleet believed that defendants' premiums or any of its other charges were too high, it was free to seek lower charges or a better rating from a different insurer or bonding agent. Accordingly, we conclude that the trial justice properly granted summary judgment in favor of defendants on counts 1 through 4 of Fleet's complaint.

Next, Fleet alleges that the trial justice erred in granting summary judgment on count 5 of its complaint. It argues that the trial justice erred in concluding that defendants had no duty to classify its bond rates correctly. It further contends that the trial justice improperly relied upon this Court's holding in *Dubreuil v. Allstate Insurance Co.,* 511 A.2d 300 (R.I.1986), which, it suggests, is applicable only to property—and casualty-insurance cases.

In *Dubreuil,* the plaintiff, following a serious automobile accident, sued his insurer, Allstate, to recover expenses that he claimed would have been paid to him had his insurer provided him with uninsured-motorist coverage in excess of the minimum amount specified in the policy. The gravamen of the plaintiff's complaint was that the insurer had failed to inform him of his right to purchase uninsured-motorist insurance in excess of the statutory minimum. This Court concluded that Allstate's agent had no duty under the law to advise the plaintiff that uninsured-motorist coverage in amounts in excess of those sold by Allstate were available from other insurance carriers. *Dubreuil,* 511 A.2d at 302. We stated that "[p]lacing such a responsibility upon an insurance agent would transform insurance from a competitive industry into an industry dedicated entirely to the public welfare." *Id.* Likewise, Fleet provided no evidence that defendants were obligated to perform the alleged duty stated in the complaint—to accord its projects the Class A rating, rather than the more expensive Class B rating.

In support of its contention that defendants were under a duty to properly classify plaintiff's projects, Fleet cites several cases. For example, in *Atlantic Home Insulation, Inc. v. James J. Reilly, Inc.,* 537 A.2d 126 (R.I.1988), a contractor sued a bonding agency and an insurer who had rejected its application for a bond. This Court noted that while a bonding agency owed a duty of reasonable care in transmitting a bond application to an insurer, the plaintiff there presented no evidence to show that the bonding agent had been dilatory in complying with its duty. *See id.* at 128. Contrary to Fleet's assertions, nothing in *Atlantic Home* indicates that a bonding agent or insurer has a duty to classify a project or its insureds in such a manner as to provide contract bonds to its insureds at the lowest possible premium price or even at the rate normally charged by it to customers similarly situated.

Moreover, other jurisdictions have held that a bonding agent or insurance agent has no duty to classify a project or its insured so as to provide the insured with the lowest possible bond premium rates. For instance, in *Tunison v. Tillman Insurance Agency,* 184 Ga.App. 776, 362 S.E.2d 507 (1987), the court held that the insured was not entitled to damages from the insurance agent for excess premiums paid because the agent did not obtain cov-

erage for the insured company at the most favorable rate. See *id.* at 509. Furthermore, the court held that the insured "freely accepted and purchased insurance at the price charged by [the insurer]. The court may not rewrite the terms of an arms-length business transaction." *Id.* This is distinguished from those cases in which an insurance agent has been held liable for negligent or intentional failure to procure specific coverage for an insured. See e.g., *Dillard v. Woodall,* 167 Ga.App. 158, 306 S.E.2d 81 (1983). The *Tunison* court held that the duty of an insurance agent to procure the represented coverage does not create a corresponding duty to obtain coverage at any particular rate. *Tunison,* 362 S.E.2d at 509. "Absent an express promise to do so, an insurance agent, like any other merchant, is under *no duty* to sell to his customers at the most competitive price." *Id.* (Emphasis added.) See also *Eagle Air, Inc. v. Corroon and Black/Dawson and Co. of Alaska,* 648 P.2d 1000, 1006 (Alaska 1982); *Sullivan Co. v. New Swirl, Inc.,* 313 S.C. 34, 437 S.E.2d 30, 31 (1993).

■ Finally, Fleet argues that the trial justice improperly granted summary judgment on Goodrich's counterclaim. Fleet argues that a justice of the Superior Court, in an earlier ruling, had denied Goodrich's motion for summary judgment on its counterclaim, and therefore the trial justice was precluded from reconsidering the motion.

■ However, the prior denial of Goodrich's summary judgment motion did not preclude a second motion justice from later granting the motion after intervening events had altered the legal landscape of the case. When Goodrich argued its first motion, the viability of counts 1 through 5 of plaintiff's complaint had not yet been determined. A prior denial of a motion for summary judgment does not preclude the later granting of such a motion on an expanded record. *Mulholland Construction Co. v. Lee Pare & Associates, Inc.,* 576 A.2d 1236, 1239 (R.I.1990) (citing *Rhode Island Hospital Trust National Bank v. National Health Foundation,* 119 R.I. 823, 384 A.2d 301 (1978)). Even though no record exists from the earlier decision, it seems clear that because Goodrich had prevailed on summary judgment with respect to counts 1 through 5 of Fleet's complaint, the legal status of this case had changed rather dramatically after Goodrich's initial summary-judgment motion was denied. After the Superior Court ruled that the defendants' alleged misuse of the challenged classification system breached no duty owed to Fleet and that Fleet had suffered no damages as a result of the alleged overcharging, Fleet's defenses to the counterclaim vanished. Therefore, the hearing justice properly granted summary judgment concerning Goodrich's counterclaim.

Based upon the foregoing, we deny Fleet's appeal and affirm the Superior Court's judgment.