[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a motion for partial summary judgment made by Defendants, Unified Management Co. and its president, Gregory Ayrassian (collectively UM). Summary judgment is requested as to Counts I-V of the Plaintiff's complaint, pursuant to Superior Court Rule of Civil Procedure 56(c) and (d). The Plaintiff, Droitcour Company (Droitcour), filed a timely objection thereto.
 Facts and Travel
Droitcour is a Rhode Island corporation that has its principal place of business in Warwick. It produces precision machined parts for various industries. Specifically, Droitcour manufactures parts for original equipment manufacturers utilizing automatic screw machines. In 1993, Droitcour made arrangements to enter into a contract with UM, an employee leasing company. UM's services consist of human resources management, administration and staffing of personnel to businesses, much like a temporary staffing service. But, unlike a placement agency that provides temporary workers to an otherwise staffed company, UM's services allow a business to outsource its entire workforce and human resources administration. The employees of the client company are "deemed" to be UM's employees. In return, UM assumes all the personnel related responsibilities of the client business.
In accordance with UM's business model, Droitcour transferred its employees to UM and on October 21, 1993, entered into a contract to lease them back. The parties agreed that in exchange for a weekly flat rate, calculated as a percentage of total payroll, UM would be responsible for employee management. UM's responsibilities included hiring and firing employees, performing all administrative and government mandated fiduciary responsibilities, such as filing and depositing federal insurance contributions and federal unemployment tax, as well as administering the payroll.
An essential part of UM's obligation was to provide proper worker's compensation insurance for its employees. To this end, Droitcour covenanted to supply UM with the information necessary for UM to acquire appropriate insurance. Droitcour gave UM the job classification codes for the work it does and prior worker's compensation insurance policies.[1]
Relying on this information, UM classified its employees under the category 3632 Machine Shop NOC (not otherwise classified). This was the same classification that the employees had under Droitcour.
This relationship continued for over five years, when in 1999, Droitcour was notified by its insurance broker, Anthony Cross (Cross), that the employees could be classified under a category that was considered less risky and hence less expensive to insure. Instead of category 3632 Machine shop NOC, Cross determined that the proper classification was category 3145 Screw Machine Operator. Cross acquired worker's compensation insurance for Droitcour using the 3145 classification and Droitcour terminated its contract with UM.
On December 2, 1999, Droitcour filed suit against UM and multiple insurance carriers seeking damages, costs, interest and fees for breach of contract (Count I), breach of statutory duty (Count II), breach of constructive trust (Count III), negligence (Count IV), willful misrepresentation (Count V), and harassment and disruption of business through improper cancellation of a worker's compensation insurance policy (Count VI). Counts I, II, IV, and V are based on Droitcour's argument that UM was hired in order to provide Droitcour worker's compensation insurance at a reduced premium. Furthermore, Droitcour alleges that UM had a contractual and statutory duty to correctly classify the employees. Because UM used an incorrect classification, Droitcour suffered damages in the form of paying too much for worker's compensation premiums. The third count is based on the argument that the premiums that Droitcour paid to UM and the worker's compensation broker created a constructive trust, which was breached when the defendants overcharged Droitcour.
On December 11, 2000, UM filed a motion under Rule 56 arguing that summary judgment should be granted because neither defendant sold worker's compensation insurance to Droitcour. On May 8, 2001, the Honorable Patricia Hurst denied UM's motion. On December 1, 2003, UM filed a second motion for summary judgment arguing that it did not owe Droitcour a duty. Droitcour objected.
 Standard of Review
The Rhode Island Supreme Court has articulated the standard that a motion justice must employ in ruling on a summary judgment motion. "Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. BurrillvilleRacing Association, 603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v.State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c). When the moving party sustains its burden, "[t]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. BristolBoat Co., 705 A.2d 969 (R.I. 1998) (citing St. Paul Fire and MarineInsurance Co. v. Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)). During a summary judgment proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320 (citations omitted).
 Law of the Case
"The law of the case doctrine provides that, after a judge has decided an `interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical matter, should refrain from disturbing the first ruling.'" Balletta v.McHale, 823 A2d 292, 295 (RI 2003) (quoting Leone v. Town of NewShoreham, 534 A.2d 871, 873 (R.I. 1987)). This doctrine applies when the court is faced in a second motion with the same question in the identical manner as that presented in the first motion. Paolella v. RadiologicLeasing Assoc., 769 A.2d 596, 599 (RI 2001). However, the law of the case is a flexible rule and the Supreme Court has articulated two exceptions to it: a judge may disregard the rule when (1) the prior ruling is clearly erroneous or (2) when a subsequent ruling is based on an expanded record. Chavers v. Fleet Bank, 844 A.2d 666, 677-685 (R.I. 2004)
UM argues that summary judgment should be granted because discovery has produced an expanded record and a new question is presented. The expanded record includes (1) an admission from Droitcour that at the time the contract was entered into, the original classification, 3632, was cheaper than 3145, (2) this Court's dismissal of many of the co-defendants and (3) this Court's finding that Droitcour was not a third party beneficiary of the insurance policies acquired by UM. Additionally, UM proposes thatFleet Construction Co., Inc. v. Aetna Life Casualty Co., 746 A.2d 1247
(R.I. 2000), poses a new legal question, i.e., the question of duty, to the court. In Fleet Construction, the Supreme Court held that insurers do not have a duty to provide the cheapest rate. Id. at 1250.
Droitcour counters that this Court should acknowledge that Judge Hurst's denial of summary judgment is the law of the case because UM's motion for summary judgment is exactly the same. Also, Droitcour argues that Fleet is inapplicable because (1) the Supreme Court did not intend the holding in Fleet to extend to worker's compensation because it is highly regulated, one of the purposes of which is to assure the cheapest rates, citing R.I. Gen. Laws 27-7.1-4.1, 27-9-51 (f) [sic], (2) Fleet
only applies absent a contract provision and here we have a contract that purports to supply worker's compensation at the cheapest rate, (3) Fleet
doesn't apply because UM is not an insurer and (4) Fleet was in existence when Judge Hurst made her ruling so UM is precluded from relying on it now. Droitcour's argument is unpersuasive.
This Court agrees with the defendants that the two summary judgment motions presented different questions. Upon reviewing UM's first motion for summary judgment, it is clear that its motion was based on the argument that it did not sell insurance. Its motion was supported primarily by two affidavits. The first affidavit was of co-defendant and UM president, Gregory Ayrassian, who testified that his company is not in the business of selling insurance, but of leasing employees. The second affidavit was from June F. Alves, Chief Compliance Officer for the State of Rhode Island, Department of Labor and Training, Worker's Compensation Unit, who stated that during the period of 1993-1996, Droitcour did not carry worker's compensation insurance. UM's second motion argues that even if it were in effect selling insurance to Droitcour, it would have no duty to charge the lowest price. This argument relies primarily on theFleet case and other case law dealing with duty. These are two different questions raised in a different manner; accordingly the law of the case doctrine is not implicated.
 No genuine issues of material fact
Summary judgment will only be granted if there is no genuine issue of material fact. O'Connor v. Harry, 359 A.2d 350, 353 (R.I. 1976). The court must consider affidavits and pleadings in the light most favorable to the opposing party. Id. However, "the purpose of summary judgment procedure is issue finding and not issue determination." Id. In this case Droitcour's claims arise out of the contractual relationship that was formed in 1993. The plain meaning of the contract shows that Droitcour contracted for employee leasing services, not for worker's compensation insurance. The contract does not purport to provide the cheapest or even cheap worker's compensation insurance.
"Whether a contract's terms are ambiguous is a question of law. A contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." Garden City Treatment Center, Inc. v.Coordinated Health Partners, Inc., 852 A.2d 535, 543 (R.I. 2004) (citations omitted). When interpreting contract provisions, the Supreme Court has provided the following guidance. "Because ambiguity lurks in every word, sentence and paragraph in the eyes of a skilled advocate * * * the question is not whether there is ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, commonsense manner." Id. at 542. (emphasis in the original) (citations omitted). If the court fails to find ambiguity, then the "intention of the parties must govern if that intention can be clearly inferred from the writing and if it can be fairly carried out in a manner consistent with settled rules of law." Westinghouse Broadcasting Co., Inc. v. DialMedia, Inc., 410 A.2d 986, 991 (R.I. 1980).
The Droitcour-UM integrated contract specifies in article 3 that,
 "UMC agrees to provide to the CLIENT (Droitcour), and the CLIENT agrees to accept UMC's services in human resource management, administration and staffing of the CLIENT'S facility"
Regarding worker's compensation, article 5(a) provides that,
 "UMC shall be accountable for providing worker's compensation insurance for its employees. Although UMC is responsible for the classification of its employees if said classification is based on inaccurate and or faulty information supplied by CLIENT, CLIENT will be held liable for any fines and/or retroactive monetary classification increases incurred by UMC."
Lastly, article 10(a) expresses the two parties' agreement about what Droitcour's weekly payments consisted of:
 "The CLIENT agrees to pay UMC for services rendered pursuant to this AGREEMENT on a weekly basis. UMC's charges shall include, but are not limited to, gross wages, taxes, workers' compensation insurance charges, and administration fees."
In this case, there is only one reasonable interpretation of the above provisions. It is an agreement by UM to provide personnel and administrative services to Droitcour. The contract provisions dealing with worker's compensation merely delineate the logistical details intrinsic to UM assuming responsibility for the employees. Article 5(a) evinces the party's intent that Droitcour be relieved of the daily administrative and legal responsibilities associated with having employees. One of the legal consequences of this arrangement is that UM must provide worker's compensation for its employees. Droitcour agreed to help UM take up this mantel. Droitcour not only agreed to supply the information that UM required in order to select insurance coverage, but also to pay any costs resulting from inaccurate or faulty information.
There is nothing in this agreement that indicates that Droitcour bargained for cheaper worker's compensation insurance than it could get when it had its own employees. Additionally, there is nothing in the contract that shows that UM assumed a contractual duty to select a classification that was beneficial to Droitcour. To the contrary, article 5(a) shows that the parties were cognizant of the fact that UM was dependant on Droitcour to guide UM's classification selection and that if the classification was incorrect, UM would incur fines and expenses by law. Droitcour then agreed to indemnify UM via contract. This indemnification is not the equivalent of an insurance premium.
The argument that UM's fee was an insurance premium is controverted by the contract provision regarding Droitcour's payments to UM. Article 10 (a) is clear that the fee paid by Droitcour was a combination of the costs related to managing personnel, not solely the cost of worker's compensation.
Droitcour's evidence to the contrary must be excluded under the parol evidence rule. The parol evidence rule provides that "parol or extrinsic evidence is not admissible to vary, alter or contradict a written agreement." Paolella, 769 A.2d at 599-600 (quoting Supreme WoodworkingCo. v. Zuckerberg, 107 A.2d 287, 290 (1954)). However, "in interpreting unambiguous contracts, we `consider the situation of the parties and the accompanying circumstances at the time the contract was entered into, not for the purpose of modifying or enlarging or curtailing its terms, but to aid in the interpretive process and to assist in determining its meaning.'" Id. (quoting W.P. Associates v. Forcier, Inc., 637 A.2d 353, 356
(R.I. 1994)).
The evidence in question is an affidavit by its executive officer, Andrew Droitcour. The affidavit asserts that (1) the intent of the parties when they entered into the contract was to acquire cheaper worker's compensation, (2) UM represented to Droitcour that it would continually review and update Droitcour's worker's compensation package in order to procure for Droitcour the best and lowest compensation rates, and (3) UM led Droitcour to believe that the workers compensation insurance rates which were charged to Droitcour and indicated in weekly billings were in fact the rates being paid for insurance coverage. The affidavit proffered by Droitcour falls within the parol evidence rule because it does not merely aid in determining the intent of the parties. On the contrary, it directly contradicts the plain language of the agreement and so must be excluded. Id. at 600.
Because the contract is unambiguous and Droitcour has not presented any admissible evidence that creates a genuine issue of material fact, the next question is whether UM is entitled to summary judgment as a matter of law.
 UM is entitled to summary judgment as a matter of law because it owed no duty to Droitcour
UM is entitled to summary judgment because it owed no duty to Droitcour. "Only when an individual owes a duty to another and has breached that duty can that individual be held liable for negligence * * * Whether such a duty exists is a question of law for the court."Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950 (R.I. 1994) (citations omitted). Recently, the Supreme Court has held that neither an insurance broker nor insurer owe a duty to their insured customer to provide the lowest rates. Fleet Construction, 746 A.2d at 1250.
Even if we assume that UM was an insurance provider and that it overcharged Droitcour, here, as in Fleet, Droitcour has "failed to show that these overcharges were illegal or that defendants breached some contractual provision or other legal obligation. . . ." Id. As discussed above, there is nothing in the contract that indicates that UM assumed a duty to provide the most precise classification for its employees or that it promised to secure the lowest possible rates. Since there is neither a contractual duty nor common law duty running from UM to Droitcour, UM cannot be liable in tort.
Likewise, UM cannot be liable in contract. UM promised to provide insured workers to Droitcour, which it did for over five years. UM did not breach the contract when it insured its employees under the same classification that Droitcour did. There is no contractual agreement other than to make sure that insurance was obtained and properly administered. Extrinsic evidence to the contrary would be barred by the parol evidence rule. Paolella, 769 A.2d at 599.
Lastly, UM does not owe Droitcour a statutory duty. Droitcour cites Title 27 governing worker's compensation insurance to support its argument that Fleet does not apply. It asserts that Fleet, which dealt with construction bonding, should not be extended to worker's compensation because worker's compensation is highly regulated to ensure affordable rates. This argument is unpersuasive. First, the holding inFleet that an insurance broker or insurer does not owe a duty to its insured client was not narrow in its scope. While the facts of that particular case had to do with construction bonding, the court cited cases that arrived at the same conclusion in different contexts. Id. at 1250-51. Second, while Title 27 may attempt to regulate worker's compensation premiums, it does not confer an affirmative duty on insurers to ensure that the client is using the cheapest classification for its employees. Rather, it merely requires that insurers adhere to the classification and experience rating plan of the director of the department of business regulation. R.I. Gen. Laws. § 27-7.1-9.1 (c).
Because there are no genuine issues of material fact and UM is entitled to judgment as a matter of law, summary judgment is granted.
Order to enter.
[1] The classification system is part of the worker's compensation insurance guidelines promulgated by the Rhode Island Department of Business Regulation.