[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
THIS IS AN AMENDED DECISION TO THE ORIGINAL DECISION FILED ON FEBRUARY7, 2004.
 AMENDED DECISION
This matter came on before the Court, jury waived, in October 2004. This Court finds that Plaintiffs Larry E. Smith and Dorothea C. Smith, failed to establish a property interest in a disputed parcel of land.
 Findings of Fact
The parties are neighbors of adjoining parcels located on Block Island, in the Town of New Shoreham, State of Rhode Island. Plaintiffs, Larry E. Smith and Dorothea C. Smith, purchased their property in 1978. They originally purchased the property with co-owners and then received total ownership of the property on December 19, 1983 (Exhibit 7). The Smith lot was originally created by a deed from Mr. and Mrs. Maxfield in 1969.
In October of 1978, Mr. and Mrs. Maxfield deeded a separate lot to Mr. and Mrs. Hart, the Defendants (Exhibit 8). Each of the adjacent parcels was in excess of two acres. The Harts live at their Block Island home year-round, and their lot boarders on Corn Neck Road. The Smiths lived in their property seasonally, and rebuilt it during the years 1989 through 1991. Now retired, the Smiths occupy the property much more regularly.
The Hart property lies to the west of the Smith property. There is a strip of land between the two properties whose ownership and control is in dispute. The area in dispute is about 13,326 square feet.
None of the parties knew the exact boundary line when they purchased their respective parcels. The gentlemen referred to conversations with Mr. Maxfield regarding the boundary as being vague. Mr. Smith recalls Mr. Maxfield walking the southerly line of his parcel, but no other line. Although the northern boundary follows a stone wall, Mr. Smith was still concerned. He understood the importance of a survey and stated "I cannot imagine not having a survey." Not having completed a survey for several decades he opted to assume some risk.
In the early 1980's,[1] the Smith family planted a Christmas tree near the southwest corner of the disputed parcel. Shortly thereafter the relationship between the neighbors grew tense. As Mr. Hart had a similar boundary problem with the Blume family, who owned the Smith lot earlier, he raised the issue again with Mr. Smith. The two men discussed the need for a survey, but neither ordered a survey. During the 1980's, the southerly portion of the disputed parcel was mowed from time to time by various members of the Smith family, and the friends and tenants of Mr. Smith. Again, Mr. Hart expressed his concern. While an accord was reached that neither family would build on the disputed area, Mr. Hart did not press the issue further due to the passing of one of the Smiths' children.
On Mothers Day in 1985 or 1986, Mrs. Hart and Mrs. Smith met at the disputed area. While Mrs. Hart was planting, she allowed Mrs. Smith to use the area to store some plantings during a period of transition. Each of the parties used the area, with the Harts on the north and the Smiths on the south for their country gardening. Mr. Hart cleared and back hoed some of this area in 1986 and 1987.
After 1988, the Smiths gradually planted additional trees. They refurbished and renovated their dwelling, located approximately 40 feet from the disputed area. The project caused considerable confusion at the site from 1989 to 1991. The parties did not realize that the construction debris had been buried in the disputed area until it began to sink years later. A large sinkhole remains today.
The Smiths hosted a wedding for one of their daughters in 1993. They placed a tent on the disputed parcel. Mr. Hart moved his old cars when Mr. Smith agreed to reimburse him for towing costs.
The family and friends of the Smiths mowed the southern one-third of the disputed parcel commencing in 1981. The area of the mowed grass was not always the same, but the northerly half of the disputed area was not mowed. Mr. Hart occasionally complained of what he perceived as an expanding line of mowed grass.
In 1997, Mr. Mrs. Smith finally ordered a survey. The survey indicated that the disputed parcel was deeded to Mr. Mrs. Hart, not Mr. Mrs. Smith. Mr. Smith sent the survey with a request that the Harts convey the parcel for a very small sum. When Mr. Hart replied that he would attempt to determine the market value of the parcel, Mr. and Mrs. Smith initiated this suit.
The parties all agreed that Mr. Mrs. Hart were never ordered off the property. Neither party posted no trespassing signs on the parcel or erected any fences.
 Discussion Acquiesence
One count of Mr. Mrs. Smith's complaint sounds in acquiescence. As the high court recently stated:
 The party claiming ownership by acquiescence must show that a boundary marker existed and the parties recognized that boundary for a period equal to that prescribed in the statute of limitations to bar a re-entry, or ten years. DeCosta v. DeCosta, 819 A.2d 1261, 1264 (R.I. 2003) (citations omitted).
Accordingly, to establish acquisition of property by acquiescence Mr. and Mrs. Smith must establish that: (1) a boundary marker existed; (2) all parties recognized the marker as the boundary; and (3) the boundary existed for ten years.
At first, the Smith family alleged a full tree line had been planted along a new border in the early 1980's. After viewing a 1988 aerial photograph at trial, Mr. Smith's recollection changed drastically. He then testified that only one tree was planted on the purported "tree line" prior to 1988. Mr. Hart raised his concerns with Mr. Smith regarding the tree and mowing. While Mr. Hart took no formal action to eject the Smiths, certainly Mr. Mrs. Hart did not consent or acquiesce to the new boundary. There was no evidence presented to show that Mr. Mrs. Hart ever consented to or recognized the tree line, or any other marker, as the new boundary. They acted neighborly, but clearly showed their displeasure.
Moreover, there was no firm line. The tree was planted, but a line requires a number of points in a continuing direction. Periodic mowing was inconsistent. It was never shown to be a long, clear line.
Similar facts were presented in the case of Riverside Burial Society ofPawtucket v. Chitwood, P.C. No. 99-2713, Rhode Island Superior Court, January 10, 2003. In Riverside, this Court did not accept placement of ten to twelve hemlock trees in an irregular line as constituting a new boundary, and found the proof to be insufficient to establish claims for acquiescence or adverse possession.
As the Smith family did not plant subsequent trees until after Christmas of 1988, no true line existed prior to that. Accordingly, ten years could not have run prior to the exchange of the 1997 survey. Surely, when Mr. Mrs. Hart replied to Mr. Mrs. Smith's letter of April 1997, (Exhibit F), the border was no longer being acquiesced to. Accordingly, count 2 fails.
 Adverse Possession.
The Supreme Court has recently restated the various elements for adverse possession.
 To establish a claim for adverse possession, a claimant must demonstrate by strict proof, the elements set forth in G.L. 1956 § 34-7-1 that the possession was "`actual, open, notorious, hostile, under claim of right, continuous, and exclusive' for the statutory period of ten years." Carnevale v. Dupee, 783 A.2d 404, 409 (R.I. 2001) (quoting Locke [v. O'Brien], 610 A.2d at 555 [1992]). This Court has determined that the term "strict proof" is synonymous with clear and convincing evidence. Locke, 610 A.2d at 555. DeCosta v. DeCosta, 819 A.2d 1261, 1264
(R.I. 2003).
The statute[2] specifically requires that the claim be "uninterrupted, quiet, peaceful and actual seisin." Here Mr. Mrs. Hart complained of the Smiths' use repeatedly. Near the time that the first tree was planted, each of the men recognized the need for a survey, as the boundary appeared undefined. When the Smiths' tenants and family began to mow, Mr. Hart again expressed concern. Mr. Smith and Mr. Hart then agreed not to build on the disputed area. Mrs. Hart allowed Mrs. Smith the use of the area for temporary plantings during the Mother's Day meeting, which was consensual not hostile. In 1986 and 1987, Mr. Hart used a brush cutter and backfilled some of the parcel. Consistently, Mr. and Mrs. Hart guarded their property interests, while attempting to be neighborly toward Mr. and Mrs. Smith.
Mr. Mrs. Smith infer that the burial of the debris on the site (some time between 1989 and 1991) constituted adverse use. However, neither party knew that the materials had been buried until the ground sank several years later. Likewise, the 1993 wedding was more neighborly than hostile as Mr. Hart moved cars from the site after Mr. Smith paid for costs.
The Harts never ordered the Smiths off the land and vice versa. While the Smiths have used the land to the south, the Harts periodically worked and used the northern section of the disputed parcel. As indicated there were never any keep-out signs or fences.
In Reitsma v. Pascoag Reservoir Dam, LLC, 774 A.2d 826, 835 (R.I. 2001), the Court noted that "adverseness and hostility had been inferred from the mere use of another's property without that owner's communicated permission to do so." In that instance, a boat ramp was placed on the property and used by many for recreational activities for 32 years. The case at bar is quite different. Not only was the use of the property by the Smiths less pronounced and periodic, but the Harts either consented to the Smiths' use of the property, or protested when the Smith family was going too far.
A recent Supreme Court case is quite instructive:
 Contrary to the trial justice's belief, however, a person attempting to obtain title through adverse possession need not be under a good faith mistake that he or she had a legal title to the land. Rather, to constitute a hostile use, the adverse possessor need only establish a use inconsistent with the right of the owner, without permission asked or given, . . . as would entitle the owner of the land to a cause of action against the intruder for trespass. Similarly a good faith mistake concerning who owns the land in question is not required to establish a claim or right to a disputed parcel. Tavares v. Beck, 814 A.2d 346, 351
(R.I. 2003) (citations omitted).
All of the acts of the Smiths were consented to or protested by Mr. and Mrs. Hart. The Smiths' use was never inconsistent or adverse to the ownership of the Harts. Mr. and Mrs. Hart were gradually clearing the property and using the parcel for field or rustic gardens. Mr. and Mrs. Hart did not intend to build on the parcel. The planting of trees was consistent with the use by the Harts.
The high court recently restated its concern for clear adversity.
 [T]he proper inquiry was whether the party claiming ownership by adverse possession used the property in a manner consistent with how owners of similar property would use such land and whether those uses were inclined to attract attention sufficient to place the world on constructive notice. Carnevale v. Dupee, 853 A.2d. 1197 at 1201 (R.I. 2004) (citing Tavares at 354).
As in Norton v. Cortemanche, 798 A.2d 925 at 932 (R.I. 2002), this Court finds that the mowed grass line does not show a definite border, lacks the permanence and definition of a fence or hedges, and leaves the alleged boundary without definition. Here, the location of the mowed grass line is ever-changing, dependent upon who is mowing it and how assertive the Smiths are attempting to be. There were no hostile acts. The requisite adversity is not present here.
As with acquiescence, an action for adverse possession requires that the claim of right endure for ten years. G.L. § 34-7-1. The tree line commenced after Christmas of 1988. The breakdown in the relationship of the parties occurred, at the earliest, when the survey was presented. Ten years did not pass. The Court rejects the argument that the earlier acts of mowing constitute a sufficient adverse act. Such mowing and planting one Christmas tree do not constitute consistent adversity, hostility, or notoriety so as to justify an action for adverse possession. Mr. and Mrs. Smith have failed to establish an action for adverse possession.
 Reformation of Deed
The complaint also includes a count for "reformation of the deed." This was not argued extensively. To warrant a reformation, plaintiffs must show "`by reason of a mistake, common to the parties, their agreement fails in some material respect correctly to reflect their prior completed understanding.'" Nunes v. Meadowbrook Development Company, Inc.,824 A.2d 421, 425 (R.I. 2003) (citation omitted). "Thus, the parties' intent is a determinative factor." Nunes, 824 A.2d at 425 (citation omitted). The Smiths did not proffer a reason for reforming the deed. Mr. and Mrs. Smith made no attempt to show Mr. Maxfield's intent,[3] or any other grantor's intent, in setting the boundary line. Mr. and Mrs. Smith failed to show Mr. Maxfield's intent in his deed to Mr. Blume or the intent of the subsequent grantors. They failed to show that the Maxfield deed to Mr. and Mrs. Hart should be reformed. Accordingly, this count must fail.
 Trespass
As Mr. and Mrs. Smith failed to show a claim of title, or an ownership interest in the property, the Court now turns to the trespass count raised in the counterclaim. To recover for trespass, a party must show (1) the adverse party intentionally entered onto the owner's property; and (2) plaintiff had rightful possession of such property. State v.Verrecchia, 766 A.2d 377 (R.I. 2001); Berberian v. Avery, 99 R.I. 77,205 A.2d 579 (1964). One who has consent or privilege and enters on to another's property is not a trespasser. Ferreira v. Strack, 652 A.2d 965,969 (R.I. 1995).
William L. Prosser, The Law of Torts, 4th ed., at 63, classified trespass to land as an intentional tort, but adds:
 The defendant is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong. Thus, he is a trespasser although he believes the land is his own. . . . Prosser at 74 (footnotes omitted).
Mr. Mrs. Smith had Mr. and Mrs. Hart's consent on almost all occasions. The temporary plantings were with the express consent of Mrs. Hart. The 1993 wedding involved the removal of the cars and hence the consent of Mr. Hart. It was not until Mr. Smith presented the survey to Mr. Hart and asked him to adhere to the tree line when the trespass became both obvious, intentional, without license, consent or privilege. When the Smiths continued to mow some of the disputed parcel, the trespass became actionable. Although an action for injunction may lie, there was no showing of any monetary damage. An action for trespass is not contingent upon actual damage or actual injury, Mesolella v. City ofProvidence, 508 A.2d 651, 668 (R.I. 1986). Accordingly, nominal damages are awarded to Mr. and Mrs. Hart against Mr. and Mrs. Smith in the amount of One ($1.00) Dollar.
 Conclusion
For the reasons stated, judgment is awarded in favor of the Defendants, Daniel F. Hart, Jr. and Deborah L. Farrell Hart, in regard to all claims and counts raised in the complaint, including Counts I, II and III. Judgment is ordered in favor of the defendants-counterclaimants, Daniel F. Hart, Jr. and Deborah L. Farrell Hart, against the plaintiffs-counterclaimants, Larry E. Smith and Dorothea C. Smith, for the amount of One ($1.00) Dollar.
[1] Mr. Mrs. Smith were unsure when the tree was planted as various witnesses place the planting between 1981 and 1985.
[2] The statute states:
 34-7-1. Conclusive Title by peaceful possession under claim of title. — Where any person or persons, or others whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action.
[3] Mr. Maxfield clearly delineated the description of the property in the written deed. The border, as described in the Smith deed and the Hart deed, is along the same line.